Irby TEEL *v.* Charles L. DANIELS,
Director of Labor, and CHARTER BUILDERS

E 80-35 606 S.W. 2d 151
Court of Appeals of Arkansas
Opinion delivered October 15, 1980

Appellant, *pro se.*

*Herrn Northcutt,* for appellees.

GEORGE HOWARD, JR., Judge. Claimant was disqualified by the local agency for benefits under Ark. Stat. Ann. § 81-1106(a) (Repl. 1976) of the Employment Security Law on the grounds that he left his last work voluntarily and without good cause connected with the work. The action of the agency has been affirmed by both the Appeals Tribunal and the Board of Review.

This appeal presents the typical issue involved in employment security cases, namely, whether the holding of the Board of Review is supported by substantial evidence.

The claimant testified essentially, before the Appeals Tribunal, that he left respondent's employment when he and

a representative of his union were unable to persuade respondent to take corrective measures to eliminate certain hazards that he and some of his fellow workers were subjected to in work assignments, the repeated and constant verbal abuse that he and his fellow workers were subjected to from the superintendent of the job, and the failure of the respondent to provide drinking water and adequate toilet facilities for the workers.

Specifically, the evidence reflects that while the respondent's work force consisted of between 50 and 75 individuals and involving a construction project that embraced approximately 100 acres of land, respondent provided only three sani-cans, as toilet facilities, for the work force. As a consequence, employees had difficulty in making use of these facilities in order to relieve themselves when on ground level; and that the work force performing roofing assignments, which included the claimant, were admonished to relieve themselves by urinating from the roof rather than leaving their work stations in order to make use of the sani-cans; that drinking water was scarce and that water which was provided was generally not fresh; and that claimant and his associates were rebuked and even threatened to be discharged when they sought to register complaints about these conditions. Claimant also testified that he was required to ascend a 36 foot ladder in order to reach his work station and that the ladder was not built to accommodate a person of his size; that claimant and three of his associates were required to perform roofing assignments without being afforded handrails for their personal protection and safety; and that on the morning that claimant voluntarily left, the roof was "iced over" and when claimant reported this to the foreman, claimant simply received the usual threat of being fired if he did not commence work.

Mr. Craig Cherry, Project Engineer, appeared in behalf of the respondent. Mr. Cherry testified that he had no personal knowledge of the problems enumerated by claimant by stating:

"Ah, like Mr. Teel says, most of my information is hearsay because I'm not per se in the field, I am in the office."

It is clear that Mr. Cherry's testimony, which was offered to refute the charges of the claimant, is hearsay for he possessed no personal knowledge of the circumstances related by claimant. It was vital to respondent's case to have some representative who had direct and personal knowledge regarding the merits or demerits of claimant's charges. No explanation was given for the absence of the foreman and the general superintendent. Claimant's testimony stands uncontradicted.

The standard resorted to by the courts in determining good cause in connection with an employee's voluntary departure from his employment has been stated as:

> ". . . [A] cause which would reasonably impel the average able-bodied, qualified worker to give up his or her employment. . . . .
>
> ". . .
>
> ". . . '[G]ood cause' is dependent not only on the reaction of the average employee, but also on the good faith of the employee involved. In this context, good faith, which has been held to be an essential element of good cause, means not only the absence of fraud, but also the presence of a genuine desire to work and to be self-supporting. . . .
>
> ". . .
>
> ". . . [Another element] in determining good cause is whether the employee took appropriate steps to prevent the mistreatment from continuing. . . ."

See: 76 ALR 3d, "Good Cause" for Abandonment of Employment, § 2, pages 1093 and 1095.

It is plain that claimant and several of his fellow workers were subjected, without provocation, to not only threatening, profane and abusive language, but were told that they would be fired if they continued to complain about the lack of toilet facilities, drinking water and safe working conditions.

When claimant's personal efforts proved futile, claimant's union steward, an employee of respondent's, was requested to intercede, but the steward was threatened likewise, when told if he did not return immediately to his job assignment. While an official representative of claimant's union was permitted to dicuss the matter with respondent's superintendent and assurances were made that corrective measures would be taken, the situation in reality appeared to have gone from bad to worse. It is clear that the proverbial straw that broke the camel's back was when claimant was expected to ascend a ladder to a heighth of 36 feet to perform some roofing assignments where the decking was iced over and produced an immediate hazard to claimant's personal safety. Given all of the circumstances enumerated, we are not persuaded that the claimant may be characterized as a "supersensitive employee" who has blown a rather minor and insignificant incident out of proportion in order to recover unemployment benefits under the pretext that working conditions and the harrassment on the part of his superintendent constitute good cause for abandonment of his employment.

We hold that the evidence is insufficient to sustain the decision of the Board of Review.

Reversed and remanded.