Tom Glaze, Judge.
 

 Claimant was employed by Blevins Electric Company on February 16, 1981, and worked until June 3, 1981. On June 5, 1981, claimant quit her job, notifying her employer (the President of the Company) by phone that she was quitting because he had kissed and touched her without her permission. Claimant made the call from her lawyer’s office; the call was recorded without the employer’s knowledge.
 

 Claimant filed for unemployment benefits on June 19, 1981. On July 6, 1981, the Agency awarded her benefits finding that she quit because of sexual harassment on the job, that she tried to preserve her job rights by talking with the vice-president, and that she quit with good cause connected with the work as required by Section 5 (a) of the Arkansas Employment Security Law.
 

 Section 5 (a), which is found at Ark. Stat. Ann. § 81-1106 (a) (Cum. Supp. 1981), provides:
 

 81-1106. Disqualification for benefits. — For all claims filed on and after July 1,1973, if so found by the Director an individual shall be disqualified for benefits:
 

 (a) Voluntarily leaving work. If he voluntarily and without good cause connected with the work, left his last work. Such disqualification shall continue until, subsequent to filing his claim, he has had at least thirty (30) days of employment covered by an unemployment compensation law of this State, or another state, or of the United States.
 

 Provided no individual shall be disqualified under this subsection if, after making reasonable efforts to preserve his job rights, he left his last work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification; or, if after making reasonable efforts to preserve his job rights, he left his last work because of his illness, injury, pregnancy or other disability.
 

 * # #
 

 On July 22,1981, an appeal hearing was held at the instance of the employer. Both the claimant and the employer attended the hearing and each was represented by counsel. On July 24, 1981, the Appeal Tribunal reversed the Agency and denied claimant benefits. The Tribunal found that claimant voluntarily quit her job without good cause connected with the work. The Tribunal noted that claimant had never voiced an objection to the alleged sexual harassment by the employer because she was in fear of losing her job. The employer denied the allegations of harassment, and the company’s vice-president (the employer’s son-in-law) testified that he had not observed anything out of the ordinary. The vice-president, however, did admit that the claimant had talked with him about her specific concerns over her employer’s treatment.
 

 The claimant appealed to the Board of Review, and on November 19, 1981, it affirmed the decision of the Appeal Tribunal. The Board stated:
 

 If the alleged sexual harassment were of such an extreme nature to cause her to quit her job, she made no effort to stop the harassment and she stated she endured it for several weeks. Not until her actual resignation, did she mention the reason for quitting to the employer. There is nothing in the record to show that the employer’s actions constituted sexual harassment to such a degree that it was unbearable. (Emphasis supplied.)
 
 [1]
 

 The Board’s finding in support of its decision to deny benefits implies that the sexual harassment claimant endured must be “unbearable” before such treatment could be considered good cause to voluntarily quit her job. We cannot agree. The proper standard in determining good cause is set forth in Teel v. Daniels, 270 Ark. 766, 769, 606 S.W.2d 151, 152 (1980) as follows:
 

 “ ... [A] cause which would reasonably impel the average able-bodied, qualified worker to give up his or her employment. . . .
 

 “ . . . ‘[G]ood cause’ is dependent not only on the reaction of the average employee, but also on the good faith of the employee involved. In this context, good faith, which has been held to be an essential element of good cause, means not only the absence of fraud, but also the presence of a genuine desire to work and to be self-supporting. . . .
 

 “... [Another element] in determining good cause is whether the employee took appropriate steps to prevent the mistreatment from continuing. . . .
 

 The conduct of the employer, of which claimant complained, included one instance of kissing, one of grabbing her breasts and other occasions of patting her “all on the back” or on her face. We can hardly agree with the Board if it intended, by its findings, to conclude that these types of acts are not reasonably sufficient to impel the average able-bodied, qualified worker to give up his or her employment.
 

 Apparently, the Board was primarily concerned with claimant’s response, or lack thereof, to her employer’s affectionate displays. Claimant testified that she withdrew or jerked away from her employer when he kissed her and when one of the touching incidents occurred. However, she said that she never otherwise objected to the treatment because she needed the job. She undisputably expressed her complaints to the vice-president (and son-in-law of the employer), but he responded by saying that he was between “a rock and a hard place.” The only time claimant discussed these matters with the employer was when she telephoned him from her attorney’s office. As noted earlier, this conversation was recorded unbeknownst to her employer. Although appellee argues to the contrary on appeal, a fair reading of this conversation supports claimant’s story that unpermitted, sexual contact took place. Obviously, the Board agreed since it concluded that “[t]here is nothing in the record to show that the employer’s actions constituted sexual harassment to such a degree that it was unbearable.” In view of the Board’s finding on this point, it is not necessary for us to relate the text of the taped telephone conversation. It is enough to say that we cannot agree that sexual harassment must be “unbearable” before an employee can quit. Nor do we agree with the Board, under the facts of this case, that claimant’s response to such harassment failed to meet the standards required under § 81-1106 (a), supra. Claimant discussed the matter with the company’s vice-president, and he was unable to assist her. In fact, the vice-president expressed that he was placed in a difficult position in view of the complaints she directed toward the company’s president. We believe that claimant reasonably determined her situation was impossible to resolve. Since there was no other official or supervisor to whom she could turn to for help besides the person (employer) committing the acts, we believe it was reasonable under these circumstances for her to quit. Short of directly confronting her employer, she had no other recourse. We certainly cannot agree that she was required to resolve the complaints with the person who perpetrated the harassing acts when he also is the president of the company, the person who hired her and the one who could fire her. We fail to find any substantial evidence to show claimant failed to make every reasonable effort to preserve her job.
 

 [1]
 

 Actually, claimant testified the sexual harassment occurred during her last two weeks of employment.