Jamshed KHAN *v.* DIRECTOR, Employment
Security Department

E 93-155 892 S.W.2d 513.

Court of Appeals of Arkansas
En Banc
Opinion delivered December 21, 1994

*David A. Carroll*, for appellant.

*Allen Pruitt*, for appellee Employment Security Department.

*Everett O. Martindale*, for appellee Lofland Co.

JOHN B. ROBBINS, Judge. Appellant Jamshed Khan worked for Lofland Steel Company for approximately six years before quitting on February 1, 1993. He filed a claim for unemployment benefits, asserting that he left his employment for good cause connected with the work. The Board of Review denied benefits, and Mr. Khan now appeals. For reversal, he argues that substantial evidence does not support the Board's finding that he voluntarily left his employment with Lofland Steel Company without good cause connected with the work. We find no error and affirm.

■ Arkansas Code Annotated § 11-10-513 (1987) provides that an individual shall be disqualified for benefits if he, voluntarily and without good cause connected with the work, leaves his employment. In determining whether a claimant is disqualified because he left work without good cause connected with the work, the question of what constitutes "good cause" must be determined by the facts in each particular case. *Haig* v. *Everett*, 8 Ark. App. 255, 650 S.W.2d 593 (1983). On review, we review the findings of fact of the Board of Review in a light most favorable to the successful party and affirm if supported by substantial evidence. The credibility of witnesses and the drawing of inferences from the testimony is for the Board of Review, not this court. *Baker* v. *Director*, 39 Ark. App. 5, 832 S.W.2d 864 (1992).

In the case at bar the Board of Review agreed with the decision of the Appeal Tribunal and adopted its findings of fact and conclusions of law. Mr. Khan testified before the Appeal Tribunal that he refused to accept a transfer to supervise a night shift because it would be staffed with untrained employees, and as a consequence he was unfairly demoted. Furthermore, for the following three months he was harassed by his employer for the purpose of forcing his resignation. This culminated in his resignation on February 1, 1993, after he was reprimanded by the plant superintendent in the presence of other employees. Mr. Bill Farzley, the company president, and Mr. Alex Bhatti, the plant superintendent, also testified to the circumstances leading up to Mr. Khan's resignation.

On this proof, the Appeal Tribunal found the following facts:

At the time of the claimant's hire, he was the night-shift supervisor. Shortly after his hire, the employer did away with its night shift and the claimant was a supervisor on the day shift for approximately six years. In October 1992, the claimant was asked by the president and the plant superintendent to return to his position as a night supervisor. The claimant did not wish to return to that position because he was going to be required to supervise a staff which consisted mostly of new workers. The claimant did not believe the workers could perform the jobs properly and that he would be demoted or discharged if the job was not performed properly. The claimant was given the option of accepting the transfer or being demoted from supervisor to a shearer. The claimant chose to take the demotion. This constituted a $3.50 per hour cut in pay. Between October and late January, the claimant worked in that position. For the last three days of the claimant's employment, he worked as a chain man. The claimant was transferred to that position because the employer needed his services there. It was not a demotion from the shearer position.

The claimant had a meeting with the plant superintendent and the president shortly before he quit his job on February 1. During that meeting, the claimant listed demands that he wished to be met if he was to accept the night-shift supervisor position. The president and plant superintendent still wished for the claimant to accept the position. The claimant was told by the president that he would get back to him on February 1 with an answer. On February 1, the plant superintendent reprimanded the claimant because the claimant was talking to other employees in the shearing area. The plant superintendent instructed the claimant to go to the area where [he] was performing work as a chain man and to quit talking with everybody. The claimant became upset and quit.

The Appeal Tribunal concluded that it was not unreasonable for the employer to request Mr. Khan to go to the night shift, nor was it unreasonable to demote Mr. Khan for refusing to do so. The Tribunal noted that Mr. Khan did not immediately resign

after his demotion. Furthermore, the Appeal Tribunal concluded that Mr. Khan failed to demonstrate that he was unfairly reprimanded at any time after failing to take the transfer. The Appeal Tribunal held that Mr. Khan voluntarily left his last work without good cause connected with the work.

 In *Teel* v. *Daniels*, 270 Ark. 766, 606 S.W.2d 151 (Ark. App. 1980), this court stated that "good cause" to terminate one's own employment is defined as "a cause which would reasonably impel the average able-bodied, qualified worker to give up his or her employment." The claimant has the burden of proving, by a preponderance of the evidence, that he terminated his employment for good cause. *Harris* v. *Daniels*, 263 Ark. 897, 567 S.W.2d 954 (1978). In the instant case, substantial evidence supports the finding that Mr. Khan failed to prove that an average worker in his position would have been impelled to give up his employment. Therefore, we affirm.

COOPER and MAYFIELD, JJ., dissent.

895 S.W.2d 561

MELVIN MAYFIELD, Judge, dissenting. I would reverse and remand this case for new or additional findings of fact and conclusions of law because I think the factual findings and the legal conclusions are conflicting and inconsistent. The majority opinion affirms the Board of Review's denial of unemployment benefits to the appellant based upon the conclusion of the majority of the court that the appellant voluntarily left his work without good cause connected with his work. More than forty years ago the Arkansas Supreme Court held that when an administrative body fails to make findings of fact, it is not the province of the courts to make those findings, and the cause is remanded to the agency so a finding can be made on that issue. *Reddick* v. *Scott*, 217 Ark. 38, 228 S.W.2d 1008 (1950). "For instance," the *Reddick* court said, "[I]t has been our consistent practice under the Workmen's Compensation Act to remand the cause to the Commission if that body fails to make a finding upon a pertinent issue of fact." 217 Ark. at 41, 228 S.W.2d at 1010. The Arkansas Court of Appeals followed this decision in *Lawrence* v. *Everett, Director*, 9 Ark. App. 138, 653 S.W.2d 140 (1983), where we said the Board of Review had failed to make a finding on an issue essential to our decision of the case. In *Helena-West Helena School*

*District* v. *Stiles*, 15 Ark. App. 30, 688 S.W.2d 326 (1985), we remanded the case to the Board of Review for it to determine whether the appellant had notice of a hearing held by an appeals referee. In *Alcoholic Beverage Control Board* v. *Hicks*, 19 Ark. App. 212, 217, 718 S.W.2d 488, 491 (1986), we said the "long-standing rule is that when an administrative agency fails to make a finding upon a pertinent issue of fact. . . . [t]he cause is remanded to the agency so that a finding can be made on that issue." In *Wright* v. *American Transportation*, 18 Ark. App. 18, 22, 709 S.W.2d 107, 110 (1986), we remanded a case to the Arkansas Workers' Compensation Commission because "we are simply unable to tell from the record upon what factual basis the claim was denied." And in *Cook* v. *Alcoa*, 35 Ark. App. 16, 811 S.W.2d 329 (1991), we said:

> Moreover, it is our duty to review the decision of the Commission to determine whether it is supported by the facts found by the Commission. In appeals from the Commission, we cannot indulge the presumption used in appeals from trial courts that even if the court states the wrong reason, we will affirm if the judgment is correct.

35 Ark. App. at 20-21, 811 S.W.2d at 332. (Citations omitted.)

In the case now before us, the Board of Review merely stated that the decision of the Appeal Tribunal was correct and that decision was adopted by the Board and affirmed without any additional findings. Therefore, the majority opinion quotes from the Tribunal's opinion, but the findings of fact and conclusions of the Tribunal which I cannot reconcile are the following:

[Findings of Fact]

The claimant had a meeting with the plant superintendent and the president shortly before he quit his job on February 1. During that meeting, the claimant listed demands that he wished to be met if he was to accept the night-shift supervisory position. The president and plant superintendent still wished for the claimant to accept the position. The claimant was told by the president that he would get back to him on February 1 with an answer. On February 1, the plant superintendent reprimanded the claimant because the claimant was talking to other employees in the shearing area. The plant superintendent instructed the

claimant to go to the area where [he] was performing work as a chain man and to quit talking with everybody. The claimant became upset and quit.

[Conclusions]

Although various testimony was given at the hearing as to why the claimant is no longer employed, the testimony and the evidence in the file indicate the main reason the claimant eventually quit his job was that he did not think he was treated fairly in regards to the demotion and because he thought he was treated unfairly after he chose not to accept the night supervisory position. It was not unreasonable for the employer to request the claimant to go to the night shift. It is understandable that the claimant would have wanted a more experienced staff, but the employer's failure to provide that was, in part, caused by the tough work situation the employer was in. The average person would not have quit his job at that point. It is noted that the claimant did not quit either. However, it was not unreasonable for the employer to demote the claimant if he would not accept the transfer. The claimant has failed to show that he was treated in an unreasonable manner by the employer. The claimant has not demonstrated that he was unfairly reprimanded or demoted after failing to take the transfer. It is noted that the claimant made efforts to solve his problems before quitting. However, the claimant voluntarily left his last work without good cause connected with the work within the meaning of the law.

The findings say the claimant "became upset and quit" after he was reprimanded by the plant superintendent for "talking to other employees in the shearing area." But the first sentence in the conclusions says "the main reason the claimant eventually quit his job was that he did not think he was treated fairly in regards to the demotion and because he thought he was treated unfairly after he chose not to accept the night supervisory position." Then the conclusions say that "the average person would not have quit at that point." Then follows the odd statement "It is noted that the claimant did not quit either." I simply do not understand what all this means. These statements conflict with each other and, in addition, conflict with the finding that he

"became upset and quit" after he was reprimanded for "talking to other employees in the shearing area."

So, why did the claimant quit? Until we know, we cannot determine if he quit for good cause connected with his work. That is the issue. Under the law as cited at the beginning of this dissent, we cannot make the factual finding of why the claimant quit — it is only our duty to determine if the Board's factual finding is supported by substantial evidence and then if the Board's decision on the facts follows the law. We are not permitted to say the Board is right even if its findings are wrong.

I think we must remand for the Board to make the necessary factual findings. Therefore, I dissent from the majority opinion's affirmance.

JUDGE COOPER joins in this dissent.