Laurie CLAFLIN *v.* DIRECTOR, Arkansas
Employment Security Department

E 95–12                                    920 S.W.2d 20

Court of Appeals of Arkansas
En Banc
Opinion delivered April 24, 1996

JAMES R. COOPER, Judge. The appellant in this unemployment

compensation case was employed by Leather Brothers, Inc., buckling dog collars. After the appellant had been so employed for approximately one and one-half years, her foreman advised her that her hours would be reduced to half time. The appellant worked eleven and one-half hours the following week and, after the conclusion of her last work day, informed her foreman that she had located a full-time job and was quitting. Subsequently, she filed a claim for unemployment benefits which the Board of Review denied on the ground that she had quit her last work without good cause connected with the work. From that decision, comes this appeal.

For reversal, the appellant contends that the Board erred in finding that she quit her last job without good cause connected with the work.[1] We affirm.

■ Whether there was good cause for an employee to quit his job is a question of fact. *Morton v. Director*, 22 Ark. App. 281, 742 S.W.2d 118 (1987). In determining the sufficiency of the evidence to sustain the findings of the Board of Review, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings and affirm if they are supported by substantial evidence. *Perdrix-Wang v. Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993). Even when there is evidence upon which the Board might have reached a different decision, the scope of our judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

In the case at bar, the Board based its finding that the appellant lacked good cause for quitting on the appellant's failure to make further inquiries concerning her decrease in hours. In this context we think it significant that the appellant's supervisor originally informed her that the reduction in work hours was something that the employer wanted to "try," and that it was the employer's intention to move the appellant back to full-time employment after the week of half-time work.

■■ "Good cause" depends not only on the good faith of

---

[1] Arkansas Code Annotated § 11-10-513 (1987) provides that an employee who left his last work voluntarily and without good cause connected with the work shall be disqualified for benefits.

the employee involved (which includes the presence of a genuine desire to work and be self-supporting), but also on the reaction of the average employee. *Perdrix-Wang v. Director, supra; see McEwen v. Everett*, 6 Ark. App. 32, 637 S.W.2d 617 (1982). Another element of "good cause" is whether the employee took appropriate steps to rectify the problem. *McEwen v. Everett, supra.* Given these considerations, we cannot say that the Board's finding that the appellant quit without good cause connected with the work is not supported by substantial evidence.

Affirmed.

PITTMAN and ROBBINS, JJ., agree.

ROGERS, STROUD, and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I dissent from the decision to affirm the Board of Review because I cannot agree that fair-minded persons faced with the evidence in this case could decide that Laurie Claflin voluntarily left her job *without good cause connected with the work.* The only proof is that Claflin left her job after the employer reduced her work hours to half time, and failed to indicate whether she would ever be returned to full-time duty. She worked the half-time schedule, found other full time employment, and told her foreman that she was quitting to take the full-time position. That was when the foreman told her that she could return to full-time duty. Because I am convinced that Claflin's conduct was wholly consistent with what any other reasonable and able-bodied worker would have done, and because I do not accept the view stated in the majority opinion that a worker in Claflin's position owes the employer a duty to track down unidentified management personnel superior to her foreman to obtain relief from a job decision that has caused economic injury, I write this dissenting opinion.

The Board of Review held that Claflin was disqualified from receiving unemployment benefits because she voluntarily left her job with Leather Brothers Inc., without good cause connected with the work. Arkansas Code Annotated § 11-10-513 (Repl. 1987) states, in pertinent part:

> (a)(1) If so found by the director, an individual shall be disqualified for benefits if he, voluntarily and without good cause connected with the work, left his last work.

(2) The disqualification shall continue until, subsequent to filing a claim, he has had at least thirty (30) days of employment covered by an unemployment compensation law of this state, another state, or the United States.

The term "good cause" means a justifiable reason for not accepting the particular job offered. To constitute good cause, the reason for refusal must not be arbitrary or capricious, and the reason must be connected with the work itself. The question of what is good cause must be determined in the light of the facts in each case. *Wacaster* v. *Daniels*, 270 Ark. 190, 603 S.W.2d 907 (1980). Although benefits will be denied an employee who leaves employment for general economic reasons not connected with some specific alleged unfairness perpetrated by her employer, where the employer does an act that does economic injury to the employee that act may be good cause connected with the work within the meaning of the statute. *Jackson* v. *Daniels*, 269 Ark. 714, 600 S.W.2d 426 (1980). And while allegations of substantial decrease in wages may be considered as good cause for voluntary departure from employment, complaints based primarily upon economic conditions beyond the control of the employer do not fit the statutory exemption from disqualification. *Armstrong* v. *Daniels*, 270 Ark. 303, 603 S.W.2d 481 (1980). We reaffirmed our view on this statute in *Perdrix-Wang* v. *Director, State Emp. Sec. Dep't*, 42 Ark. App. 218, 856 S.W.2d 636 (1993), when we observed that good cause means a cause that would reasonably impel the average able-bodied qualified worker to give up employment.

At the October 11, 1994, hearing before the appeals referee, Claflin admitted quitting her job with Leather Brothers after having worked there for two months through a temporary services agency, and for another year and several months as a direct employee. Claflin testified that her foreman told her that her work hours would be reduced to half-days because the employer had decided to try doing so. She worked a week under the half-day arrangement before accepting a full-time job for a different employer. Until she accepted the full-time job, nobody from Leather Brothers had informed her that she would be returned to full-time duty, or when that might happen, if it happened. On the day that Claflin quit the job, she finished her half-day schedule and waited for twenty minutes to talk with the foreman and tell him that she was quitting. Only then did the foreman tell her that she could return to full-

time work.

Jo Ann Robinette, Office Administrator for the employer, admitted that the employer had been changing its factory due to fluctuations in orders, and suggested that Claflin's foreman had contemplated relocating her to another work station to provide additional working hours. Robinette conceded that the foreman should have told Claflin that the employer intended to return her to full-time work the following week; nevertheless, there is no proof that the foreman or anybody else did so.

The Board of Review reasoned that Claflin lacked good cause connected with the work for quitting because she did not consult a higher manager than her foreman before quitting. There was no reason for Claflin to seek an audience from anybody else, however, when the person that the employer appointed to supervise her work and schedule her working hours had already told her that she was assigned to half-time work because the employer wanted to try that arrangement. Employees should be able to reasonably rely on the people that their employers employ as their supervisors to honestly and accurately communicate information as fundamental as when people will work, and for how long they will work each day. Here the undisputed proof is that Claflin was never told that the new work schedule was only temporary, and had no reason to expect to return to work full-time until after she had already sought, found, and told her foreman that she had accepted a full-time job elsewhere. The average able-bodied and qualified worker would have done precisely what Claflin did — try to find full-time work elsewhere — when faced with the prospect of being a half-time worker for an indefinite period of time.

The likely impact of the reasoning adopted by the majority opinion will be that employers who make decisions causing economic harm to their workers will cause those workers to be denied unemployment benefits because the workers somehow fail to protest the decision to the right management official. If that is the meaning of "good cause," none of our previous cases have suggested it. The employer in this case certainly produced no evidence that makes this new standard sensible, because there is no proof that the employer identified any type of appeal or grievance procedure that someone in Claflin's position would have known was available. There is no proof that the employer even identified anybody to whom Claflin could have appealed, assuming she had known that

an appeal of her half-time work assignment was possible. There is no proof that anybody in management even knew that the appeal process that the majority reasons Claflin ought to have attempted was possible. Nevertheless, today our court has decided that Claflin and all other similarly situated workers must somehow invent for themselves an ad hoc appeals process from the various economically harmful job decisions that their employers unilaterally make. The workers must select the persons to whom the appeals shall lie. The workers must determine the time span in which to effect the appeals. They must do these things despite having no authority or responsibility for the initial decisions that produce their economic injury, and despite having no ability to correct or otherwise adjust the effects of that injury. Meanwhile, employers may act to the economic peril of their workers without any accountability for instituting the very grievance or appeal procedure that the majority reasons that Claflin should have pursued, without telling the employees that there is a right to appeal, and without even identifying the person or persons to whom any appeal shall be taken.

The decision announced today certainly will not inspire an employer to institute an appeal process because there is no sanction for failing to do so. The workers will suffer if no process is instituted, if a process does not work properly, and if they somehow misjudge who in management is responsible for deciding whether past decisions that cause economic harm will be reversed or otherwise adjusted. It is difficult to imagine a more unjust and unreasonable result, or one having less of a factual basis.

Hopefully, Claflin will petition the Supreme Court of Arkansas to review the decision reached in her case. If the Supreme Court grants the petition for review, and reverses the result reached by our court, workers will be spared the hardships and unfairness that will otherwise flow from the decision we have made. If not, one shudders to think what our decision will mean for the workers who, like Claflin, are innocent of any misconduct related to their work, and are innocent and helpless bystanders to management decisions to change work schedules, close plants, reduce the number of people in a workforce, and the other decisions that can cause them economic injury. Meanwhile, our decision means that those workers will not be able to recover unemployment benefits unless they engage in the foreseeably futile exercise of hunting — and finding — some unidentified management official who might be able to

provide relief that only management can give, but which only workers are now obligated to create.

This result is unfounded, unreasonable, and unjust. I dissent.

ROGERS and STROUD, JJ., join in this opinion.