Jane AHREND *v.* DIRECTOR, Employment Security Division

E 94-191                                                930 S.W.2d 392

Court of Appeals of Arkansas
Division II
Opinion delivered October 2, 1996

*Stephen Tedder*, for appellant.

*Allan Pruitt*, for appellees.

WENDELL L. GRIFFEN, Judge. It is undisputed that the appel-

lant, Jane Ahrend, voluntarily quit her work at the Arkansas Industrial Development Commission ("AIDC"). She had worked for the AIDC for seventeen years. For about eleven years her immediate supervisor was Rob Middleton, a boss in whom she confided and with whom she shared her frustrations about what she considered harassment from others within the AIDC. In 1988 or 1989, Middleton suggested, and the appellant began to receive, psychiatric help for her stress that was undisputedly job-related. The stress and the harassment appear to have stemmed from what the appellant deemed misappropriation of funds within the AIDC and her unsuccessful attempts to point out and correct the problems.

In 1993, Middleton was fired and replaced by Kathryn Leapheart. On Friday, January 7, 1994, the end of the first week of reporting to her new boss, the appellant had a meeting with Leapheart during which the appellant questioned the purchase of some office furniture as well as other expenditures. According to appellant, Leapheart condoned the questioned purchases. Leapheart denied sanctioning any unlawful expenditures. The next day (Saturday, January 8) a friend (Deborah Pipkins) found appellant sitting in a fetal position at home in a chair, tearful and almost incoherent. Pipkins eventually gave notice to the director of the AIDC of the appellant's inability to work and her intent not to come back, and it was Pipkins who actually cleaned out appellant's desk at work.

The appellant applied for unemployment benefits and was denied. Both the Appeal Tribunal and the Board of Review affirmed the denial of benefits, finding that she voluntarily left her last work without good cause under Ark. Code. Ann. § 11-10-513 (1987). She filed a timely appeal to this court raising five points for reversal. We find no merit in any of the five points and affirm.

■ In her first point, the appellant challenges the voluntariness of her decision to quit. She argues that she was incapable of making a rational decision due to her extreme emotional distress. Her testimony, however, belies this argument. Appellant testified that she sent word to her employer through Pipkins that she was quitting due to emotional distress and the strain of harassment. Although her emotional state may have been extremely poor, she has never contended, until now, that this somehow affected the voluntariness of her decision. Rather, it seems that her emotional distress, heightened by her January 7 meeting with Leapheart, helped solidify her decision to leave. We do not address arguments

made for the first time on appeal. *Sinks* v. *State*, 44 Ark. App. 1, 864 S.W.2d 879 (1993).

The appellant contends in her second point that she should have been excused from attempting to resolve her problems at work through the available grievance procedures because the same individuals responsible for her harassment were in charge of the grievance procedure. This violates the clear statutory language of the Arkansas Employment Security Law.

> No individual shall be disqualified under this section if, *after making reasonable efforts to preserve his job rights*, he left his last work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification or if, *after making reasonable efforts to preserve job rights*, he left his last work because of illness, injury, pregnancy, or other disability.

Ark. Code Ann. § 11-10-513(b) (Repl. 1996) (emphasis added). The Board of Review adopted the findings and conclusions of the Appeal Tribunal and specifically added a new conclusion that "the evidence fails to establish that the claimant made reasonable efforts to preserve her job rights."

The undisputed proof was that, while appellant shared her concerns with her new boss, she never asked for a leave of absence, actually turned down an offer for a different job within the department, and left after working only one week under her new boss. In addition, in the final meeting with appellant, Leapheart encouraged her to put her concerns in writing and told her they would be shared with the director of the AIDC and the governor. Leapheart testified that she never received the appellant's complaints in writing.

We hold that an attempt at the employer's grievance procedure is part and parcel of the "reasonable efforts to preserve job rights" under the statute. This is so even if the prospects for resolution under the available grievance procedure may not appear promising from the employee's perspective. The Board of Review held that the appellant had failed to make these reasonable efforts. Applying the substantial evidence standard of review as we must to the Board's decision, we cannot say the Board erred on this point. *Perdrix-Wang* v. *Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993).

The appellant has not directed us to any new facts or law[1] that convinces us otherwise.

In her third point, the appellant contends that there is no substantial evidence to support the Board's conclusion that the AIDC was not misappropriating funds. Therefore, appellant further contends, there is no substantial evidence to support the conclusion that she left the AIDC without good cause. As an initial matter, we note that neither this court nor the Board of Review need decide in this unemployment matter whether the AIDC's actions were legal. Our sole focus is on the Board of Review's decision and, in this particular case, its decision with respect to good cause.

■ Good cause has been defined as a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment. *Teel v. Daniels*, 270 Ark. 766, 606 S.W.2d 151 (1980). It is dependent not only on the *reaction* of the average employee, but also on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting. *Id.* (Emphasis added.) What constitutes good cause for leaving employment is ordinarily a question of fact for the Board to determine from the particular circumstances of each case. *Perdrix-Wang, supra.*

■ Whether the appellant *perceived* that illegality had occurred, or continued to occur, at the AIDC, and whether her *reaction* to that perception was within the parameters of good cause was a question of fact. We find no reason to overturn the conclusion from that factual inquiry by the Board under the substantial-evidence standard. The taking of appropriate steps to prevent a perceived misconduct from continuing is an element to be considered in determining whether an employee had good cause to quit work. *Brown v. Director*, 54 Ark. App. 205, 924 S.W.2d 492 (1996). The Board appeared to base its holding not only on the appellant's failure to invoke the grievance procedure, but also on her ten-year

---

[1] The appellant failed to cite any authority whatsoever for her first three points on appeal. For her last two points, the appellant cited no Arkansas authority, but instead directed us to cases from other jurisdictions, none of which were recent. This court has long held that assignments of error unsupported by convincing argument or authority will not be considered on appeal. *Rogers v. Rogers*, 46 Ark. App. 136, 877 S.W.2d 936 (1994). All of the points on appeal, particularly points one, two and three, could have been affirmed on this basis alone.

delay in taking any action other than speaking to her supervisor. These factors seemed to weigh at least as heavily in the good-cause determination as any perception the appellant might have had of wrongdoing within the AIDC.

■ Fourthly, the appellant argues that her situation constituted a "personal emergency" or an "illness" contemplated by Section 11-10-513(b). We disagree. A condition precedent to both exceptions is that the employee must make reasonable efforts to preserve her job rights. The Board of Review expressly amended the Appeal Tribunal's opinion to include a finding that appellant did not make reasonable efforts. As discussed above, there is substantial evidence to support this legal conclusion. If, for example, we consider appellant's illness or emergency to have begun when her psychiatrist diagnosed her with depression (at least three years before she left her employment), her only efforts to preserve her job rights after that point was to talk with her supervisor. If we consider her illness or emergency to have begun on January 7th (her last meeting with Leapheart) or January 8th (when Ms. Pipkins discovered her emotionally distraught at home), she did nothing after either date to preserve her rights. Instead, she quit without notice. . Accordingly, we do not reach the question of whether the appellant's plight rises to the level of an emergency or an illness because the Board of Review's finding that she did not first make reasonable efforts to preserve her job rights is supported by substantial evidence.

■ Finally, appellant urges that her good cause for leaving and her good-faith effort to preserve her job is proven under a totality of the circumstances. We are cited to no employment security cases that employ a totality-of-the-circumstances test, and we are aware of none. The standard of review is substantial evidence. We hold that substantial evidence exists in this case to support the Board's decision regarding good cause, good faith, and every other issue raised on appeal. *Brown, supra*; *Perdrix-Wang, supra*.

Affirmed.

ROBBINS and STROUD, JJ., agree.