Craig W. WENZL *v.* DIRECTOR,
Employment Security Department

E 96-211 959 S.W.2d 63

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered December 22, 1997

*Phyllis Edwards*, for appellee.

SAM BIRD, Judge. Appellant Craig Wenzl appeals a decision of the Board of Review denying him unemployment compensation. We find that the decision of the Board of Review is supported by substantial evidence; therefore, we affirm.

Appellant worked for Anderson Merchandisers in a route-sales job as a "rack jobber," one who takes the product into the store and personally stocks and arranges the display of the product. His products were music, books, and videos, and his main customer was Wal-Mart. On June 30, 1995, appellant sustained severe injuries when a tractor-trailer truck rolled down a hill and over his company car. He was off work for four months. Appellant testified that when he returned to work in October he was still experiencing a lot of pain, and he found it hard to keep up with his job. He said the company had a trainee working his route

while he was off and helping him when he returned. Nevertheless, none of his merchandise had been ordered while he was out, and his route was in a "real mess." Appellant said he didn't have the energy or the strength to deal with trying to get the route ready for the holidays because it required working fast and carrying a lot of merchandise.

Appellant also testified that his take-home pay was reduced because the trainee was getting his commission. Appellant said he mentioned this to his sales manager without results. At the time of his injury, appellant said he was earning a salary of $1,300 a month, plus a $1,122.99 commission. When he returned to work after his injury, he received a salary of approximately $1,384 a month but no commission. Historically, he had received his highest commissions in November and December; his commission check alone for December 1994 was $1,702.08.

In January, appellant resigned. He testified that his main reason for resigning was his physical condition; he simply was unable to stand up to the physical requirements of the job. Appellant also testified that he suspected he was going to be fired. He said when his manager, Bill Lutrell, wanted to speak about his territory, Lutrell would talk to the trainee and ignore appellant.

Lutrell testified that there appeared to be some confusion about appellant's role when he came back with regard to the person appellant called a trainee. He said after appellant's accident, the man was assigned appellant's territory and was no longer considered a trainee. He explained that when appellant returned to work he was not assigned a territory because "he was not ready to accept the territory, and he said so even himself." Lutrell said:

> And the basic agreement was that when he was ready, and this was [what] we were planning after Christmas, sometime in January or February 1st, that he would be reassigned the territory, and since he was not assigned the territory, Todd [the man appellant called the trainee] was assigned the territory. Todd did receive all the commissions for that.

Lutrell said appellant never complained to him about not getting his commission, and that appellant did not give himself or the company an opportunity to see if he could work a territory alone.

Lutrell said it was his intention to assign appellant to a territory around February 1 and give him some help to see if his physical problems were temporary, and, if not, deal with it at that time. He said he never had any intention of firing appellant.

■ Arkansas Code Annotated section 11-10-513 (Repl. 1996) provides in pertinent part:

> (a)(1) If so found by the director, an individual shall be disqualified for benefits if he, voluntarily and without good cause connected with the work, left his last work.
>
> . . . .
>
> (b) No individual shall be disqualified under this section if, after making reasonable efforts to preserve his job rights, he left his last work due to a personal emergency of such nature and compelling urgency that it would be contrary to good conscience to impose a disqualification or, if, after making reasonable efforts to preserve job rights, he left his last work because of illness, injury, pregnancy, or other disability.

Good cause has been defined as a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment. *Teel v. Daniels*, 270 Ark. 766, 606 S.W.2d 151 (Ark. App. 1980). What constitutes good cause for leaving employment is ordinarily a question of fact for the Board to determine from the particular circumstances of each case. *Ahrend v. Director*, 55 Ark. App. 71, 930 S.W.2d 392 (1996).

■ On appeal, the findings of fact of the Board of Review are conclusive if they are supported by substantial evidence. Ark. Code Ann. 11-10-529(c)(1) (1987); *Feagin v. Everett*, 9 Ark. App. 59, 652 S.W.2d 839 (1983). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Victor Indus. Corp. v. Daniels*, 1 Ark. App. 6, 611 S.W.2d 794 (1981). We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Feagin v. Everett, supra*. Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*; *Perdrix-Wang v. Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993).

Appellant's superior, Lutrell, said he intended to give appellant back a route around the first of February and see if appellant could handle it physically. However, appellant resigned before Lutrell had an opportunity to find appellant a new route or communicate his intentions to appellant. Lutrell testified, and appellant admitted, that appellant never inquired whether the company had any plans for returning him to a sales route of his own.

The dissenting opinion relies upon *Ladish v. Breashears*, 263 Ark. 48, 563 S.W.2d 419 (1978), to support its contention that this case should be reversed because appellant experienced a substantial cut in pay. But in *Ladish* the court recognized that the issue presented was a question of fact, and, of course, it is well settled that factual determinations of the Board of Review must be affirmed if supported by substantial evidence. *Victor Indus. Corp.*, *supra*. The dissent's statement that when appellant returned to work he received only 57% of his former pay is misleading. The record reveals that appellant actually experienced a slight increase in his base salary (from a monthly average of $1,300 to $1,384) after his return to work. He did not, however, receive the commissions on sales because the commissions were being paid to the person who was assigned temporarily to take appellant's place while appellant was, admittedly, physically unable to do the job.

■ The Board of Review's finding that appellant left his last work without making reasonable efforts to preserve his job rights is supported by substantial evidence.

Affirmed.

AREY, JENNINGS, ROGERS, and GRIFFEN, JJ., agree.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse this case and remand for an award of benefits because I do not believe that the decision of the Board of Review is supported by substantial evidence and because our case law mandates an award of benefits where an employee leaves his job because of a reduction in pay. When Craig Wenzl returned to work on October 30, 1995, after an on-the-job injury, he received only 57% of his former pay, and a "trainee" whom he understood had been assigned to assist him was receiving his commissions. Wenzl worked two

months without any clue from his employer that he would be returned to his former status.

Although Wenzl's supervisor, District Manager Bill Luttrell, testified that he had actually assigned this trainee to Wenzl's territory shortly after Wenzl's accident, he never stated in the hearing that he had informed Wenzl of this, and Wenzl testified that he was never told this by Luttrell. Wenzl then worked for two months at approximately one-half of his former pay before resigning.

In *Ladish Co. v. Breashears*, 263 Ark. 48, 563 S.W.2d 419 (1978), the Board of Review found that Breashears left his job because of reduction in pay and a reclassification to a lower level. The Board of Review then concluded that this caused the work to become unsuitable and that Breashears left his last work for good cause. The Arkansas Supreme Court affirmed the action of the Board of Review in awarding unemployment benefits. *See also Jackson v. Daniels*, 269 Ark. 714, 600 S.W.2d 427 (Ark. App. 1980) (an act by the employer that does economic injury to the employee may be "good cause connected with the work"); *Carpenter v. Director*, 55 Ark. App. 39, 929 S.W.2d 177 (1996) (increased distance and risk of travel and costs of gasoline reducing appellant's take-home pay was good cause to quit); and *Morton v. Director of Labor*, 22 Ark. App. 281, 742 S.W.2d 118 (1987) (a change in duties calling for less competence and lower remuneration is cause for work to become unsuitable and good cause for voluntarily quitting).

Although Luttrell testified that he intended to give Wenzl back his route around the first of February and see if he could handle it physically, he did not communicate his intent to Wenzl during the two months he worked at half pay or even when Wenzl handed in his resignation. Wenzl stated that he left his work for two reasons: because his wages were cut a thousand dollars a month and because he was having trouble physically meeting the demands of the job. Under our case law, these reasons constitute good cause connected with the work. Moreover, in *Jackson v. Daniels, supra*, this court stated that because an employee who voluntarily leaves his employment for good cause connected with the

work is not required to preserve his job rights, "we attach no significance to . . . the abruptness of the claimant's departure."

The majority relies on *Teel v. Daniels*, 270 Ark. 766, 606 S.W.2d 151 (Ark. App. 1980), in which this court stated that good cause is cause that would reasonably impel the average ablebodied, qualified worker to give up his or her employment. This standard depends on the worker's perspective, at least impliedly, at the time that he decides to give up his job. An employer's future plans, if not communicated to the worker by the time he makes his decision, obviously do not and should not figure into the analysis of whether the situation would justify the worker's decision to quit. Yet the Board of Review and the majority rely on the employer's assertion that Wenzl was going to be assigned a territory, to find that he did not leave his employment for good cause.

The majority has in essence created a "secret good intentions" defense for employers to assert after they have driven an employee out of a job. Workers are left to the mercy of employers' good faith not to claim secret good intentions, a precarious position if it was the employer's bad faith that forced the employee to resign. For the foregoing reasons, I would reverse and remand to the Board of Review for an award of benefits.