Connie P. SWAIN *v.* DIRECTOR, DEPARTMENT of
WORKFORCE SERVICES

E 07-159                                            283 S.W.3d 603

Court of Appeals of Arkansas
Opinion delivered April 23, 2008

*Law Offices of Sara M. Hartness*, by: *Sara M. Sawyer-Hartness*, for appellant.

*Allan Pruitt*, for appellee.

JOHN MAUZY PITTMAN, Chief Judge. The Arkansas Board of Review denied unemployment benefits to appellant on the ground that she failed to make a good-faith effort to prevent mistreatment from recurring and, therefore, did not leave her job for good cause connected with the work. On appeal, appellant argues that the Board erred in so concluding. We agree, and we reverse and remand.

A person is disqualified from receiving unemployment benefits if she left her last work voluntarily and without good cause connected with the work. Ark. Code Ann. § 11-10-513(a)(1) (Repl. 2002). Good cause is that which would reasonably impel the average able-bodied, qualified worker to give up her employment. *Teel v. Daniels*, 270 Ark. 766, 606 S.W.2d 151 (Ark. Ct. App. 1980). It depends on the good faith of the employee, including a genuine desire to work and to be self-supporting, and also on the reaction of the average employee under the circumstances. *Id.* A determination of good cause is usually a fact question within the province of the Board of Review. *Harris v. Daniels*, 263 Ark. 897, 567 S.W.2d 954 (1978). On appeal, the findings of fact of the Board of Review are conclusive if they are supported by substantial evidence. *Terravista Landscape v. Williams*, 88 Ark. App. 57, 194 S.W.3d 800 (2004). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

The Board made the following findings of fact:

> [T]he claimant presented that she quit her work for the employer as a quality assurance (QA) auditor because of a night or second-shift supervisor's chronic harassment, lack of cooperation, and foul and abusive language. The claimant described that she protested about

the second-shift supervisor's behavior to her immediate supervisor, the QA manager, several times. In particular, after an intense incident in November 2006, the QA manager told the claimant, in effect, that management would stop the second shift supervisor's offensive behavior. Then, when there was a recurrence in January or February 2007, the claimant met with the QA manager and the plant manager concerning the second shift supervisor's offensive behavior. Again, the claimant received assurances that the management would remedy the problem. However, on April 4, 2007, there was another recurrence of unruly behavior of the second-shift manager in response to which the claimant quit by walking off the job in mid-shift.

The nature of this last instance of abuse was more fully described in the findings of the Appeal Tribunal, which were adopted by the Board of Review as its own:

[The second-shift supervisor] confronted the claimant because he felt that she was not performing her job correctly and because he felt that claimant had reported him for something he had done. [The second-shift supervisor] told the claimant, "You think that you've been f*cked, but I have been f*cked worse than you." The claimant was later speaking to a USDA inspector. [The second-shift supervisor] called her and told her to come to the office. He confronted her about his belief that she was going to speak to [the QA manager] about him the following day. The claimant felt that [the second-shift supervisor] was intentionally trying to provoke her. She quit.

On the basis of these findings, the Board concluded that appellant failed to prove that she left her job for reasons that would impel the average able-bodied, qualified worker to give up her employment. In so concluding, it reasoned that, because the second-shift supervisor's abuse abated for some time after appellant reported it, it would not have been "futile" for appellant to continue to endure and report the abuse to management in the hope that a "more permanent" remedy might be obtained. We hold that this reasoning is fundamentally flawed and resulted in an erroneous conclusion.

The law does not require a worker to exhaust every possibility in an effort to rectify mistreatment and abuse, but

instead requires only that which would be reasonable for an average employee under the circumstances. The Board found as a fact that appellant made multiple attempts to preserve her job by reporting her supervisor's harassment and verbal abuse, that the abuse nevertheless recurred, and that appellant quit after the supervisor abused her for the third time and confronted her regarding her intention of continuing to report his actions to management. We do not think that reasonable minds could conclude, on the basis of the facts actually found by the Board, that an employee lacks good cause connected with the work for terminating her employment unless she continues to endure abuse, later including abuse for "whistle blowing," after she has made two fruitless efforts to rectify the problem with management.

Under normal circumstances, reversal of the Board on a fact-intensive issue would be accompanied by a remand with directions to conduct further proceedings consistent with the law as expressed in our opinion. Here, however, we are presented with the exceedingly rare circumstance where the Board has made all the relevant findings of fact but has simply reached the wrong legal conclusion based on the facts as found. It is appropriate under such singular circumstances for us to remand with directions to enter an award of benefits, and we do so in this case.

Reversed and remanded.

ROBBINS and MARSHALL, JJ., agree.