
# ARKANSAS COURT OF APPEALS

DIVISION III
No. E-15-761

BRENDA RIDLEY

APPELLANT

V.

DIRECTOR, DEPARTMENT OF
WORKFORCE SERVICES, AND DAVID
PEPPERS DDS PLLC

APPELLEES

**Opinion Delivered** October 5, 2016

APPEAL FROM THE ARKANSAS
BOARD OF REVIEW
[NO. 2015-BR-02273]

AFFIRMED

## LARRY D. VAUGHT, Judge

Brenda Ridley was disqualified by the Employment Security Department for unemployment benefits on the grounds that she left her last employment voluntarily and without good cause connected to the work. This decision was affirmed by both the Appeals Tribunal (Tribunal) and the Board of Review (Board). On appeal, Ridley argues that the findings of the Board are not supported by substantial evidence. We affirm.

Pursuant to Arkansas Code Annotated section 11-10-513(a) (Repl. 2012), an individual shall be disqualified for unemployment benefits if she voluntarily and without good cause connected with the work left her last work. Whether there is good cause for an employee to quit her job is a question of fact. *Claflin v. Dir.*, 53 Ark. App. 126, 127, 920 S.W.2d 20, 21 (1996). "Good cause has been defined as a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment." *Carpenter v. Dir.*, 55 Ark. App. 39, 41, 929 S.W.2d 177, 178 (1996) (citing *Perdrix-Wang v. Dir.*, 42 Ark. App. 218, 856 S.W.2d 636

(1993)). Other elements in determining good cause are "whether the employee took appropriate steps to prevent the mistreatment from continuing," *Teel v. Dir.*, 270 Ark. 766, 606 S.W.2d 151 (Ark. Ct. App. 1980), and "whether the employee took appropriate steps to rectify the problem." *Claflin*, 53 Ark. App. at 128, 920 S.W.2d at 22.

We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *Voss v. Dir.*, 2015 Ark. App. 521, at 3, 471 S.W.3d 661, 664. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*, 471 S.W.3d at 664. Even when there is evidence on which the Board might have reached a different decision, the scope of our review is limited to a determination of whether the Board reasonably could have reached the decision that it did based upon the evidence before it. *Id.* at 3–4, 471 S.W.3d at 664. Issues of credibility of witnesses and weight to be afforded their testimony are matters for the Board to determine. *Id.* at 4, 471 S.W.3d at 664.

Ridley, a dental assistant, began working for Dr. David Peppers[1] in January 2014. On the morning of August 24, 2015, Ridley learned that a coworker, Amanda Sponsel, was planning to tell Dr. Peppers's wife that Ridley and Dr. Peppers had exchanged text messages of nude pictures of each other. Later that morning, Ridley left the office and never returned. In September 2015, Ridley filed a claim for unemployment benefits. She received a notice of agency determination denying her claim, stating that she left her work voluntarily and without good cause connected with the work.

---

[1] Ridley had previously worked for Dr. Peppers in 2007 for six to eight months.

SLIP OPINION

Ridley appealed the agency determination to the Appeals Tribunal, and a hearing was held on October 22, 2015. Ridley testified that from October to December 2014, Dr. Peppers flirted with her, asked her for naked pictures, touched her breasts and butt and, on one occasion, asked her to have sexual intercourse. She admitted that she sent him nude pictures of herself on more than five occasions thinking that he would treat her better. She said he sent her pictures of his penis. Ridley also testified that Dr. Peppers was verbally and mentally abusive to her at work. She said that he was violent in the office, throwing things and knocking pictures off the wall. She said that he once threw a "curing light" at her because he was upset about a procedure.

According to Ridley, on August 24, 2015, Sponsel said she planned to leave the office to tell Mrs. Peppers about the nude pictures that Ridley and Dr. Peppers had exchanged. Ridley said she thereafter received a text message from Sponsel advising that Mrs. Peppers recommended that she (Ridley) leave the office immediately because "[Mrs. Peppers] had no idea what [Dr. Peppers] would do" when he learned that his wife knew about the pictures. Ridley testified that she left the office immediately and went to Mrs. Peppers's office.

Once she left, Ridley testified that she believed she no longer had a job at the dental practice, although she conceded she was never told by Dr. Peppers that she was fired. She admitted that she left the office because Mrs. Peppers suggested she should. Ridley said that she exchanged emails with Dr. Peppers on August 26. She said that he did not ask her to return to work and that she did not ask him at that time if she could return to work. She said that she loved her job but did not ask him about it because she was afraid of him.

Sponsel testified that she worked as a dental assistant for Dr. Peppers for eight-and-one-half years and that she carried on a sexual relationship with him for eight years. She stated that Dr. Peppers confided in her that he abused pharmaceutical drugs. Sponsel further stated that while Dr. Peppers "picked on" Ridley about her work, she (Sponsel) was unaware of the nude pictures or any sexual contact between Ridley and Dr. Peppers. Sponsel learned of the pictures on August 24 and advised Ridley that she planned to tell Mrs. Peppers about them. Sponsel also said that she and Mrs. Peppers told Ridley to leave the office because they were afraid of what Dr. Peppers might do.

Dr. Peppers admitted that he had a problem with prescription medication following failed surgeries. However, he denied engaging in violent behavior in the office, requesting nude pictures from Ridley, and touching her. He stated that she sent him the first nude picture and that he asked for more, which she sent.

Dr. Peppers also stated that he did not fire Ridley and that she could have had her job back if she would have returned to work. He stated that he was expecting her to return to work the following day. He testified that he sent her a text message asking if she was okay, but she did not respond. Dr. Peppers also testified that Ridley did not fear him, she never made any complaints about his behavior, and she thanked him for giving her the job.

The Tribunal affirmed the department's denial of benefits, finding that Ridley quit her job due to a personally adverse circumstance. The Tribunal found that Ridley claimed she was discharged, but her employer did not fire her, and that she voluntarily left work and refused to return. The Tribunal further found that Ridley's fear of Dr. Peppers was not rational and that she left the office before working conditions could have been affected.

Ridley appealed the Tribunal decision to the Board, and the Board affirmed. It concluded that Ridley voluntarily left her work without good cause connected to the work. The Board found that Ridley left her work based on the recommendation of a coemployee and her supervisor's wife; not her supervisor. The Board further found that Ridley did not take any steps to address the situation with Dr. Peppers before quitting; that she failed to prove that she was mistreated; or in the event that she was mistreated, she failed to prove that she took appropriate steps to attempt to prevent the mistreatment from continuing. Finally, although Ridley testified that she left her work and did not return because she was afraid of Dr. Peppers, the Board found her fear was unwarranted.

Ridley argues that substantial evidence fails to support the Board's decision that she voluntarily left her work without good cause connected to the work because the evidence showed that Dr. Peppers was abusing prescription medication, he mentally and verbally abused her, he sexually harassed her, and his wife recommended that she leave the office for her safety. While acknowledging the unfortunate and inappropriate work environment at Dr. Peppers's dental practice, we must adhere to our standard of review in unemployment-compensation cases. Even when there is evidence on which the Board might have reached a different decision, the scope of our judicial review is limited to a determination of whether the Board could reasonably reach its decision on the evidence before it. *Voss*, 2015 Ark. App. 521, at 3–4, 471 S.W.3d at 664. We also recognize that the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Johnson v. Dir.*, 84 Ark. App. 349, 352, 141 S.W.3d 1, 3 (2004). Viewing the evidence in the light most favorable to the Board and accepting that it is not our function to determine the weight and credibility of the

testimony, we hold that the Board could have reasonably reached its decision—that Ridley voluntarily left her last work without good cause connected with the work—based on the evidence before it.

First, substantial evidence demonstrated that Ridley voluntarily left her last work. When Ridley learned that Sponsel was going to tell Mrs. Peppers about the nude pictures, Ridley left work. There was no evidence that Dr. Peppers fired her. Ridley admitted that she left work because Sponsel and Mrs. Peppers—not her supervisor—recommended it. Ridley exchanged emails with Dr. Peppers two days after she quit, and in those emails, she did not ask him about returning to work. Finally, there was evidence that Dr. Peppers did not want Ridley to quit, he was expecting her to return to work the following day, and he would have let her stay if she wanted.

Second, substantial evidence supported the Board's finding that Ridley voluntarily left her work without good cause connected to the work. Ridley claims that she had good cause not to return to work and did not inquire about her job after she left because she was afraid of Dr. Peppers. However, the Board did not believe that Ridley was afraid of Dr. Peppers. Issues of credibility of witnesses and weight to be afforded their testimony are matters for the Board to determine. *Weinstein v. Dir.*, 2013 Ark. App. 374, at 3, 428 S.W.3d 560, 562.

Based on the evidence, the Board could have reasonably found that Ridley did not leave her work because she was afraid of Dr. Peppers but rather because she was uncomfortable knowing that Dr. Peppers's wife had the nude pictures. Ridley testified that she was afraid that Mrs. Peppers would show the pictures to her boyfriend and that he would leave her. This same concern was stated in Ridley's emails to Dr. Peppers on August 26, two days after she left

work. According to Ridley, Dr. Peppers wrote to her, "Look, no hard feelings, but [my wife] has every text message." Ridley responded, "Oh, dear God. I don't want to lose Troy." She emailed, "I feel my whole life has crumpled. I'm too old for all this." To which Dr. Peppers emailed, "Yes, it's tough. I doubt she'll ever say anything." And Ridley wrote, "Please do give me a heads up, Doc, and thank you." Ridley did not express any fear of Dr. Peppers in her emails.

Additional evidence contradicted Ridley's claim that she was afraid of Dr. Peppers. After Ridley quit, Dr. Peppers sent her a message and asked if she was okay. Dr. Peppers stated that Ridley never made any complaints about his behavior; she thanked him for giving her the job; and she never said that she feared him. Ridley testified that she loved her job. We further note that there is no evidence that Ridley had any interaction on August 24, 2015, with Dr. Peppers to justify her alleged fear. There was no evidence that Dr. Peppers was angry when Ridley left work or upon learning that his wife knew of his relationship with Ridley or Sponsel. Therefore, the Board could have concluded that Ridley was not afraid of him as she claimed.

We are aware of cases in which we held that sexual harassment by a supervisor was good cause for an employee to voluntarily terminate her employment. *Relyea v. Dir.*, 104 Ark. App. 235, 238–39, 290 S.W.3d 34, 37 (2008); *McEwen v. Everett*, 6 Ark. App. 32, 637 S.W.2d 617 (1982). However, these cases are distinguishable because they did not hinge on the Board's determination that the claimants' reasons for quitting were not credible.

Based on our duty to review the evidence in the light most favorable to the Board's findings and based on the Board's finding that Ridley's testimony lacked credibility, we hold

7

that the Board's decision that Ridley voluntarily quit her last work without good cause connected with the work is supported by substantial evidence.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Michael Hamby*, for appellant.

*Phyllis A. Edwards*, for appellee.