Michael L. ANDERSON *v.* DIRECTOR, Employment
Security Department

E 96-241                                    957 S.W.2d 712

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered December 17, 1997

No briefs filed.

JUDITH ROGERS, Judge. This is an appeal from a decision of the Board of Review in which it disallowed unemployment compensation benefits based on a finding that the appellant, Michael Anderson, voluntarily quit his job without good cause connected with the work. The sole issue on appeal in this unbriefed case is whether the Board's finding that appellant lacked good cause for quitting is supported by substantial evidence. We hold that it is and affirm.

■ The Board's decision in this case was made under the authority of Ark. Code Ann. § 11-10-513(a)(1) (1987), which provides that an individual shall be disqualified for benefits if he, voluntarily and without good cause connected with the work, left his last work. Good cause had been defined as a cause that would reasonably impel the average, able-bodied, qualified worker to give up his or her employment. *Carpenter v. Director*, 55 Ark. App. 39, 929 S.W.2d 177 (1996). It is dependent not only on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting, but also on the reaction of the average employee. *Id.* The question of what constitutes good cause is a question of fact for the Board to determine from the particular circumstances of each case. *Roberson v. Director*, 28 Ark. App. 337, 775 S.W.2d 82 (1989).

■ In unemployment compensation cases, the scope of review by this court is governed by the substantial evidence rule. *Haig v. Everett*, 8 Ark. App. 255, 650 S.W.2d 593 (1983). This rule requires us to review the evidence in the light most favorable to the appellee, and if there is substantial evidence to support the decision made by the Board of Review, it must be affirmed. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brown v. Director*, 54 Ark. App. 205, 924 S.W.2d 492 (1996). Even where there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision based upon the evidence before it. *Perdrix-Wang v. Director*, 42 Ark. App. 218, 856 S.W.2d 636 (1993). We are thus not permitted to hear the case *de novo* by substituting our findings for those of the Board; even where the evidence is undisputed, the drawing of inferences is for the Board, not this court. *See Willis Johnson Co. v. Daniels*, 269 Ark. 795, 601 S.W.2d 890 (Ark. App. 1980).

The record discloses that appellant began working for Truck Transport, Inc., on January 22, 1996, as a truck driver. On April 24, 1996, he was involved in a serious accident when the truck he was driving rear-ended another vehicle that had stopped abruptly to make a turn. Both vehicles were heavily damaged, and appellant was injured in the wreck. Appellant was released by his physi-

cian to return to work on Friday, May 31; he tendered a letter of resignation the following Monday after speaking with his supervisor, Bill Williams.

In his testimony, appellant said that he understood that he had been placed on suspension following the accident and that he spoke with Williams that Monday to discuss his possible return to work. Appellant said that Williams told him that the company had not yet made a decision as to whether he would be terminated but that Williams suggested that he resign beforehand because it would look better in terms of obtaining future employment. He also testified that Williams gave him an ultimatum to either quit or be fired. He said that he resigned based on Williams's advice.

Ed Gawerecki testified on behalf of the employer. When asked by the hearing officer whether appellant would have been discharged, he responded that no decision had been made as of the time appellant resigned and that he could not say with certainty that appellant's discharge was inevitable. He explained that it was company policy to place a driver on suspension following an accident, pending the completion of an investigation. He said that, due to the severity of the accident, appellant had remained on suspension because not all of the information had been received from the federal and local agencies advising of their opinions concerning the accident. When asked if appellant would have been discharged if it were determined that the accident was his fault, Gawerecki said that "it could have gone either way." He stated that the company had no set policy calling for automatic termination and that any decision depended on the circumstances of each individual case. Gawerecki could not say whether Williams encouraged appellant to resign. He said, however, that Williams did not have the authority to discharge an employee but that such decisions were made by the corporate office.

■ ■ The Board affirmed and adopted as its own the decision of the appeal tribunal, which denied benefits on a finding that appellant voluntarily quit his job without good cause connected with the work. In finding the absence of good cause, the Board did not accept appellant's claim that he quit in lieu of certain discharge. The Board was persuaded instead by the employer-

representative's testimony indicating that appellant was not confronted with a "Hobson's" choice because no decision had been made regarding his continuing employment. The credibility of the witnesses and the weight to be accorded their testimony are matters to be resolved by the Board of Review. *Grigsby v. Everett*, 8 Ark. App. 188, 649 S.W.2d 404 (1983). We cannot say that the Board's decision is not supported by substantial evidence.

With regard to the dissenting viewpoint, the issue here is whether appellant had good cause for voluntarily quitting his job. That he might have proved eligible for unemployment compensation benefits had he either remained on suspension or been fired does not logically translate into a finding of good cause. In fact, possible eligibility under those circumstances belies the dissent's position that appellant was caught in a "Catch-22 situation" by awaiting the employer's decision. Furthermore, there is no suggestion in this record that the employer's policy was unfair or that the employer had purposely delayed bringing this matter to a conclusion. Even though the suspension was of indefinite duration, any such probationary period is of a temporary nature, yet the fact remains that appellant resigned before the situation was resolved. Although the dissent maintains that termination was inevitable, the Board made a contrary finding that is supported by substantial evidence. The record supports the view that termination was not a certainty, and appellant's own testimony establishes that he was aware that the employer had not reached that decision. We thus cannot disagree with the Board's conclusion that good cause was not shown.

Affirmed.

AREY, JENNINGS, and BIRD, JJ., agree.

ROAF and GRIFFEN, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse the decision of the Board of Review in this case, and remand for an award of benefits. When Mr. Anderson returned to work more than thirty days after the accident, after being released by his workers' compensation treating physician, he learned he would not be allowed to work. According to his testimony, he was told

by his supervisor, Bill Williams, that "we got two ways we can go. We can terminate you or you can sign a resignation." Although Williams also told Anderson that a final decision had not yet been made, Anderson stated that Williams advised him that it would be better for him to resign because it would "look better" in securing other employment. Although the testimony of a party cannot be taken as undisputed, it cannot be arbitrarily disregarded; there must be some basis for disbelieving it. *See Timms v. Everett, Director*, 6 Ark. App. 163, 639 S.W.2d 368 (1982). Here, the employer did not produce Anderson's supervisor as a witness at the hearing, and Anderson's testimony that Williams procured his resignation was not refuted.

Although the record reflects that the employer reported the suspension in various documents as, initially, for thirty days and later, in a fax to the Board, for ninety days, by the time of the hearing the Director of Administration for the employer testified that "we don't have any set time for suspension," that he did not know how long the suspension would have lasted, and that he could not say whether Anderson would have been fired. He also testified that he did not know if Williams suggested to Anderson that he resign.

Thus, Anderson was faced with a "catch-22 situation." He could continue in limbo, with no pay, and await the employer's decision, or take his supervisor's advice and resign. Had Anderson been fired for being involved in an accident, pursuant to our case law, he would have been eligible to recover unemployment benefits. This court has made clear that there is an element of intent associated with misconduct, and that ordinary negligence in isolated instances is not sufficient. "There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design." *Rollins v. Director*, 58 Ark. App. 58, 945 S.W.2d 410 (1997); *Carraro v. Director*, 54 Ark. App. 210, 924 S.W.2d 819 (1996). Moreover, had Anderson remained on unpaid "suspension," it is clear that he would have been eligible to receive benefits. Pursuant to Ark. Code Ann. § 11-10-214 (a) (Repl. 1996), a person is deemed unemployed with respect to any week during which he "performed no services" and "no wages

are payable to him." Anderson would be neither "ineligible" to receive benefits or "disqualified" from receiving benefits during an unpaid "suspension" pursuant to our employment security law. *See* Ark. Code Ann. § 11-10-510 to -519 (Repl. 1996).

Clearly, an employer cannot defeat an employee's entitlement to benefits by keeping him on unpaid suspension for an indefinite and prolonged period of time until the employee is fired or resigns. However, in this instance Anderson, on the advice of his supervisor, resigned and as a result is denied the benefits to which he would have otherwise been entitled had he not followed this advice. Consequently, Mr. Anderson's resignation was, in all important respects, merely an acknowledgment that he would never again be gainfully employed by his employer. I would reverse.

GRIFFEN, J., joins.