Jimmy C. LEWIS *v.* DIRECTOR, Employment
Security Department

E 03-256                                      141 S.W.3d 896

Court of Appeals of Arkansas
Division I
Opinion delivered January 21, 2004

*Appellant, pro se.*

*Phyllis A. Edwards*, for appellee.

WENDELL L. GRIFFEN, Judge. Jimmy Lewis appeals from the order of the Arkansas Board of Review in which the Board denied him unemployment benefits, finding that he voluntarily left his job without good cause. Appellant argues that he left his job for good cause because his employer, Ace Hardware Corporation (Ace), discriminated against him in regularly reassigning him to a lesser-paying position that could be filled by other employees with equal or less seniority. We agree and reverse and remand to the Board for an award of benefits.

Appellant began working for Ace in 1984. Ace's employees are awarded incentive pay for completing orders in less time than Ace allows for the orders to be completed. For example, if Ace allows forty minutes to fill an order and the employee fills the order in twenty minutes, the employee earns twenty minutes of incentive pay. For every sixty minutes of incentive pay earned, an employee receives an extra hour's pay at the rate of his base hourly wage.

Jobs at Ace are awarded on a seniority system, which means that employees who have been employed the longest may bid first on the most desirable positions. In the warehouse operations unit where appellee worked, the jobs were generally divided between two departments: the break-order department and the full-case department. Both departments involved material handling, but the full-case department involved filling heavier orders that weigh as much as 5,000 pounds. Employees seek break-order positions at

Ace, in part, because those positions involve lifting no more than fifty pounds at one time. In addition, break-order employees who complete their work before the work-day is finished have the option to leave early, without pay. Appellant worked primarily as an order-filler in the break-order department. However, periodically, he was reassigned to work in the full-case department.

Appellant and Ace dispute whether break-order workers tend to earn more incentive pay. Ace presented testimony explaining that the time given to fill various types of orders and full-case orders is determined by engineers who time the work of both departments and set time-completion limits that take into consideration the difficulty of the order to be filled. Appellant's position is that, despite the engineers' determinations, it is well known among the employees and is true in his personal experience that an employee can fill a greater number of lighter orders during the course of a day than he can heavier orders because there is less heavy lifting in the break-order position; therefore, appellant asserts, based on his experience, a worker can earn more incentive pay in the break-order department than in the full-case department. He maintains this is another reason why employees bid for break-order positions.

Appellant left his employment in April 2003, after complaining to various levels of management for at least five years regarding the manner in which Ace reassigned him from his break-order position to the full-case department. Appellant and Ace agree that Ace had a large turnover in the full-case department and that whenever Ace needed additional staff in the full-case department, Ace reassigned only appellant and one other male break-order filler to the full-case department. Because appellant had more seniority than the other male, he was reassigned less often.

Typically, when appellant was reassigned to the full-case department, he was assigned to work a few hours, late in the day, to complete the department's work for that day, but he had been reassigned to work two to three days in a given week. When appellant was reassigned to the full-case department, Ace typically replaced him in the break-order department with a female employee who had much less seniority. Ace admitted that there were two females in the break-order department with the same seniority as appellant, but they were never assigned to the full-case department. Because Ace generally trained new employees for the

full-case department, it did not train existing employees to work in that department. However, the full-case department suffered from a high-turnover rate because employees frequently bid out of that department. Appellant offered to train other workers to perform full-case duties and to fill in for other workers while Ace trained them, but Ace declined his offer.

During the course of his last five years of employment, appellant complained regularly about his reassignments to the full-case department. He complained to his immediate supervisor and the operations manager ten to fifteen times each, and also complained to the warehouse manager and the general manager, the highest level of management. Generally, the supervisors agreed with appellant that it was not "right" to reassign him, but that no one else was immediately available to work in the full-case department, and that it would take them approximately two weeks to hire additional employees to work in that department. Then, the process would begin again, because Ace would hire other employees to work in the full-case department, who would then bid to another department.

Approximately seven to ten days before appellant left his employment, he complained to the general manager, who responded that Ace would need one or two weeks to get appellant out of the full-case department. Approximately one and one-half weeks after that, Ace assigned appellant to do full-case work for two hours at the end of a work day. At the start of the next work day, Ace assigned appellant to full-case work for the entire day. Appellant testified it was at this point that he determined, "that was enough." He testified that he finally understood that Ace was never going to correct the problem. When asked why he did not wait until the end of the two-week period mentioned by the general manager, he stated, "It was the same old story."

Appellant quit and applied for unemployment benefits on the ground that Ace's discrimination adversely affecting his mental and physical health. Ace controverted appellant's entitlement to unemployment benefits, and a hearing was held before the Appeals Tribunal. The Tribunal found that appellant had legitimate complaints that Ace refused to address. It observed that a position in the break-order department is a more coveted position than a position in the full-case department. The Tribunal further noted that appellant's direct supervisor, Gary Kilby, stated that appellant's concerns were not addressed because other employees would have

to be trained and that it was easier to have appellant do the work. The Tribunal also noted that Kilby admitted that appellant could have easily trained his fellow employees. Although appellant was required by Ace's personnel handbook to file a grievance with human resources but did not, the Tribunal found that appellant made a reasonable effort to resolve his disputes because he complained to every level of management.

Ace appealed to the Arkansas Board of Review. The Board reversed the Tribunal, essentially finding that Ace was allowed to use its discretion in the reassignment of its employees. The Board found that although the break-order work was less strenuous, the work of both departments was similar and appellant was well-trained to work in the full-case department. The Board noted that the evidence was in dispute regarding the extent to which the reassignments adversely affected appellant's incentive-pay earnings.

The Board was not persuaded by appellant's argument that Ace's reassignment procedure was discriminatory. It noted that Ace had managerial discretion to reassign employees on a temporary basis to meet staffing needs. Further, the Board noted that appellant did not allege a contractual term under which an employee's seniority would limit managerial discretion. Because the evidence was that women would have to call for assistance in lifting heavy items, the Board found that to assign women in the full-case department would have compounded Ace's staffing problems in that department. Therefore, the Board found that this was a legitimate, nondiscriminatory business reason not to assign women to the full-case department. Finally, the Board found that appellant's claims that his problems at work were affecting his health were unconvincing. This appeal followed.

We will affirm the Board's decision on a question of fact if it is supported by substantial evidence. *Magee v. Director*, 80 Ark. App. 162, 92 S.W.3d 703 (2002). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Gunter v. Director*, 82 Ark. App. 346, 107 S.W.3d 902 (2003).

■ An individual shall be disqualified for unemployment benefits if he or she left his or her last work voluntarily and without good cause connected with the work. Ark. Code Ann. § 11-10-513(a)(1) (Supp. 2003). Good cause is a cause that would reasonably impel an average, able-bodied, qualified worker to give up his or her employment. *Garrett v. Director*, 58 Ark. App. 7, 944 S.W.2d 865 (1997). Good cause is dependent not only on the reaction of the average employee, but also on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting. *Gunter v. Director*, 82 Ark. App. 346, 107 S.W.3d 902 (2003). In addition, in order to receive unemployment benefits, an employee must make reasonable efforts to preserve his or her job rights. Ark. Code Ann. § 11-10-513(b).

We hold that the Board erred in finding that appellant did not leave his work for good cause. The Board concluded that Ace had a legitimate, business-related reason for not training women to work in the full-case department, in that if women were required to call for assistance to lift the heavier objects, that would compound Ace's staffing problems. However, Ace made no such assertion. By Ace's own admission, the only reason that it failed to train other workers was because appellant was already trained and it was easier to reassign him. Appellant testified that some orders in the full-case department weighed as much as 5,000 pounds. Thus, presumably even men who are reassigned to the full-case department will be required to call for the assistance of a forklift to handle such heavy material.

While an employer has managerial discretion, it may not use that discretion in a discriminatory manner. Even if we agree that Ace had a legitimate, business-related reason for not training *women* to work in the full-case department, it advanced no such reason for not training other *men* to work in that department. We cannot ignore that Ace's staffing problems were self-created and that its reassignment policy seems to violate its own rules regarding seniority upon which its employees rely.

■■ Appellant left his job when he realized that Ace was never going to permanently address the underlying situation that caused his reassignment to the full-case department: in spite of the fact that employees regularly bid out of the full-case department, causing staffing shortages in that department, Ace refused to train other existing workers to fill those shortages. An element in

determining good cause is whether the employee took appropriate steps to prevent mistreatment from continuing. *Teel v. Daniels*, 270 Ark. 766, 606 S.W.2d 151 (Ark. App.1980). Appellant had worked for Ace for nearly twenty years. After five years of complaining to all levels of management about being reassigned to a position that, in his experience, caused him to lose pay, after offering to assist with training other employees, and after having management violate its own seniority rules and take virtually no action to provide a permanent remedy, appellant quit. We agree with appellant that his circumstances would reasonably impel an average, able-bodied, qualified worker to give up his or her employment.

Reversed and remanded for an order to award benefits.

GLADWIN and ROAF, JJ., agree.