104 Ark.App. 235

**Gina D. RELYEA, Appellant,**

v.

**DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, Appellee.**

**No. E08–131.**

Court of Appeals of Arkansas.

Dec. 31, 2008.

No briefs filed.

KAREN R. BAKER, Judge.

Appellant Gina D. Relyea appeals a decision of the Arkansas Board of Review

denying her benefits under Arkansas Code Annotated section 11–10–513 on finding that she voluntarily left work without good cause connected with the work. For the reasons stated herein, we reverse and remand for an award of benefits.

In her petition for appeal to the Appeals Tribunal, appellant stated that she left her employment because a co-worker was sexually harassing her. She further explained her belief that if she did not remove herself from the situation that she would be subjecting herself to more of the same harassment. At the hearing, the owner, Jerry Seyller, and the offending coworker, David Fox, appeared on behalf of the employer. Witnesses for appellant were Colton Gwathney and Jason Yarbrough.

The essential facts were undisputed. Appellant worked in accounts receivable for almost two years. Mr. Fox worked throughout the employer's facility performing various duties. As a relative of the owner, Mr. Fox was employed at the business during the entire duration of appellant's employment. For at least the last eight months of her employment there, Mr. Fox made inappropriate gestures and comments to appellant. At first, he merely made inappropriate remarks regarding her appearance, such as, "You look hot today," with additional comments about how she smelled and the appearance of her breasts. When she would tell him that his actions were inappropriate and that he was making her feel uncomfortable, he would physically express his displeasure with her. She characterized his reactions as hateful and described his throwing things on her desk and walking around "huffing and puffing."

Mr. Fox's actions eventually escalated beyond verbal comments and included rubbing her shoulders and back and trying to kiss her. Her thwarting of these attempts, coupled with her verbal reprimands to Mr. Fox, made him angry and were followed by his attempts to place his hands inside her clothing. In response to the hearing officer's query as to why she did not report Mr. Fox's behavior to Mr. Seyller, she explained that she believed reporting it would not only escalate the confrontation, but would lead to her losing her job.

Other employees noticed the inappropriateness of Mr. Fox's actions toward appellant. Appellant testified that a woman whom she was training asked appellant if she had a stalker after observing Mr. Fox's behavior. Appellant further testified that the trainee also told her that Mr. Fox had made comments about appellant to the trainee outside of appellant's presence. Another employee, Mr. Gwathney, testified that he witnessed Mr. Fox touching appellant. Mr. Gwathney described how Mr. Fox would get angry when Mr. Gwathney would speak to or come around appellant. Mr. Yarbrough also testified that he had witnessed Mr. Fox massaging appellant's back and that she appeared to not be pleased with the touching. He stated that Mr. Fox stopped the touching when he saw that Mr. Yarbrough could see what he was doing.

After Mr. Seyller personally witnessed Mr. Fox's actions, appellant reported to Mr. Seyller the scope of the harassment. She continued to work for a few days after the reporting and described to the hearing officer an additional incident wherein Mr. Fox told her, "You would have to be looking that good today after all this stuff has happened." She described what she was wearing as jeans, a long sleeve sweater with a tank top under it, and a "nice big shirt over it." When Mr. Fox made this comment, appellant testified that she realized that he did not recognize the severity of the situation and that he would not

change his behavior. She said that her concern was further reinforced by co-workers relaying Mr. Fox's comments that "he only did it because of something" she did or how she dressed, reinforcing her suspicion that the blame would be placed upon her.

In his testimony, Mr. Fox never denied the touching, admitted that appellant rebuked his actions, and admitted that he believed he had problems in relation to his actions toward appellant. When appellant asked Mr. Fox if he thought he had crossed the line, he responded by saying, "maybe by massaging your chest." In response to appellant's question of what she would do when he would act like that, he said, "Slap the hand or something." He described his own reactions to her rebukes as "just kind of sulked a little bit, I guess, but I didn't, like it wasn't going to jeopardize her job." He also stated, "I don't need to be in certain areas or doing certain things, how I react to certain people." Mr. Fox commented that his exposure in the company acted as a "kind of confession" and that, since everybody knew his actions, it helped him see that there was something wrong. He apologized and announced, "I've got a problem and I'm trying to deal with it."

In response to the situation, the owner gave appellant three weeks off and reassigned her to be in the office with the owner; however, this assignment was in the same building as Mr. Fox and her job duties would still require her to interact with the offending co-worker. Mr. Seyller exposed Mr. Fox's misconduct in front of his peers, and required him to apologize to them and the appellant. Mr. Seyller also stated that he would force Mr. Fox to take vacation time to spend with his family. Appellant expressed her belief that she was being blamed for her co-worker's actions. In her letter informing Mr. Seyller that she would not be returning, she explained that the harassment had affected everything in her day-to-day life. As the time to return to the office approached, she said that she experienced bouts of depression and pressure. Mr. Seyller testified that if appellant had only had the strength and courage to come back that he believed it would have worked.

■ Arkansas Code Annotated section 11–10–513(a)(1) (Supp.2007) provides that "an individual shall be disqualified for benefits if he or she voluntarily and without good cause connected with the work left his or her last work." Good cause is defined as "a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment." *Perdrix–Wang v. Dir., Employment Sec. Dep't*, 42 Ark.App. 218, 221, 856 S.W.2d 636, 638 (1993). Good cause is dependent not only on the reaction of the average employee, but also on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting. *Lewis v. Dir., Employment Sec. Dep't*, 84 Ark.App. 381, 386, 141 S.W.3d 896, 899–900 (2004). In addition, in order to receive unemployment benefits, an employee must make reasonable efforts to preserve his or her job rights. *Id.*

■ On appeal, the findings of the Board of Review are conclusive if they are supported by substantial evidence. *Weaver v. Dir., Employment Sec. Dep't*, 82 Ark. App. 616, 618, 120 S.W.3d 158, 159 (2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial re-

view is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

 Under these circumstances, the Board could not have reasonably reached its decision that appellant voluntarily left her employment without good cause. *See Magee v. Dir., Ark. Employment Sec. Dep't,* 75 Ark.App. 115, 55 S.W.3d 321 (2001) (holding that repeated harassment can constitute good cause for leaving employment); *see also Boothe v. Dir., Employment Sec. Dep't,* 59 Ark.App. 169, 954 S.W.2d 946 (1997) (holding that sexual harassment of a spouse can constitute good cause for leaving employment). The actions of Mr. Fox qualify as a battery under Arkansas law. *See generally McQuay v. Guntharp,* 336 Ark. 534, 986 S.W.2d 850 (1999); *McQuay v. Guntharp,* 331 Ark. 466, 963 S.W.2d 583 (1998).

We hold that, when the circumstances of the separation from employment include the sexual battery of an employee, and the employer does not discharge the offender or otherwise separate the victim from the offender completely, then the employee has good cause for leaving the employment and is entitled to unemployment benefits within the meaning of Arkansas Code Annotated section 11–10–513. Here, Mr. Seyller did not separate Mr. Fox from the appellant completely; Mr. Fox remained employed on the same premises, and would have continued to have limited contact with the appellant on the job. At the hearing, Mr. Seyller offered to eliminate any contact between appellant and Mr. Fox if she would return to work. But this offer came too late. The responding discipline of Mr. Seyller's employee/relative did not eliminate the opportunity for future harassment. We conclude that this case is like *Boothe.* At the hearing, the employer's defense—by statements and ques-

tions—was that the contacts between appellant and Mr. Fox were at least partly consensual. Given the employer's view of the situation, and the incomplete remedy provided, it would have been futile for appellant to return to work. *Boothe,* 59 Ark.App. at 173–74, 954 S.W.2d at 949. Accordingly, we reverse and remand for an award of benefits.

Reversed and remanded.

BIRD and MARSHALL, JJ., agree.