# ARKANSAS COURT OF APPEALS

DIVISION IV
No. E-12-1010

| | |
|---|---|
| CATHY DAVIS<br>APPELLANT | **Opinion Delivered** SEPTEMBER 18, 2013 |
| V. | APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2012-BR-02344] |
| DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES, and<br>FOUNTAIN LAKE SCHOOL<br>APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

The appellant in this unemployment-compensation case is Cathy Davis, who worked as a special–education teacher for Fountain Lake School until quitting her employment on April 10, 2012. The Board of Review denied benefits pursuant to its finding that Ms. Davis voluntarily left her work without good cause connected with the work. Ms. Davis now appeals, arguing that the Board's decision should be reversed because the Board misapplied the law, disregarded the facts, and there was no evidence to support its finding that she lacked good cause to quit. We disagree, and we affirm.

Arkansas Code Annotated section 11-10-513(a)(1) (Repl. 2012) provides that an individual shall be disqualified for benefits if she voluntarily and without good cause connected with the work left her last work. Where a claimant has voluntarily quit work and is seeking unemployment-insurance benefits, the burden is on the claimant to show by a preponderance of the evidence that she had good cause connected with the work for quitting.

*Owens v. Dir., Ark. Emp't Sec. Dep't*, 55 Ark. App. 255, 935 S.W.2d 285 (1996). Good cause is a cause which would reasonably impel the average able-bodied, qualified worker to give up her employment. *Lewis v. Dir., Emp't Sec. Dep't*, 84 Ark. App. 381, 141 S.W.3d 896 (2004).

On appeal, we review the findings of the Board in the light most favorable to the prevailing party, reversing only when the Board's findings are not supported by substantial evidence. *Crouch v. Dir., Dep't of Workforce Servs.*, 2012 Ark. App. 262. Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Coker v. Dir., Dep't of Workforce Servs.*, 99 Ark. App. 455, 262 S.W.3d 175 (2007). Even when there is evidence on which the Board might have reached a different decision, the scope of our judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Ballard v. Dir., Dep't of Workforce Servs.*, 2012 Ark. App. 371. Issues of credibility of the witnesses and weight to be afforded their testimony are matters for the Board to determine. *Id.*

Ms. Davis was the only witness to testify. She started working as a teacher for Fountain Lake in 2006. Another teacher, Timothy O'Shields, taught in an adjacent classroom. On the afternoon of January 3, 2012, which was the day before school resumed after Christmas vacation, Ms. Davis received a telephone call from Mr. O'Shields. According to Ms. Davis, Mr. O'Shields told her that he may have sent inappropriate text messages to a female student and that he was considering resigning.

Ms. Davis testified that on January 4, 2012, the female student who had received the inappropriate texts came to her classroom and spoke to her about the situation. The female student reportedly told Ms. Davis that the student's parents were currently discussing the matter with the school principal in his office. Ms. Davis testified that, on January 5, 2012, the student again spoke with her and said that there may have been kissing involved with Mr. O'Shields. According to Ms. Davis, the student told her that her parents were in the office with the school lawyer and that the matter was being taken care of. Ms. Davis acknowledged that she never reported any of this, but she testified that she thought it had already been reported to the principal, the school lawyer, and to the Department of Human Services. She said that, had the student not informed her that the student's parents had spoken with other school officials about the matter, she would have reported it to the principal herself.

On February 27, 2012, Ms. Davis received a letter from the school superintendent advising her that she was being suspended with pay and that he intended to recommend that her contract with the Fountain Lake School District be terminated. The reason given by the superintendent for recommending her discharge was because Ms. Davis failed in her capacity as a mandatory reporter to notify the school administration or state agency about the improper relationship between the teacher and student. Ms. Davis was notified that she had a right to a hearing before the school board on the superintendent's recommendation, and Ms. Davis requested a hearing. The hearing was scheduled for April 10, 2012. However, instead of

3

going forward with the school–board hearing, Ms. Davis tendered a letter of resignation to the Fountain Lake School Board on April 10, 2012.

In Ms. Davis's testimony, she said that after being notified of her recommended termination she hired an attorney to discuss her options. She stated that her attorney tried to negotiate some sort of settlement other than termination, but that the superintendent said he would not change his recommendation because there was a "firestorm in the community" over the incident. Ms. Davis also testified that after doing some investigation, her attorney concluded that the Fountain Lake School Board routinely upheld the superintendent's recommendations. She claimed that her lawyer told her that if she went forward with the hearing in all likelihood she would be unsuccessful. Based on her lawyer's advice, Ms. Davis decided to resign rather than have a hearing. She testified that she was concerned about the negative publicity she would receive if a hearing were held, and that she was afraid that if she were terminated at the hearing it would negatively affect her future prospects of employment.

In this appeal, Ms. Davis argues that the Board erred in finding that she was disqualified for unemployment benefits because when she quit her employment it was for good cause connected with her work. Ms. Davis specifically takes issue with two of the Board's findings. First, she disputes the Board's finding that there was no evidence of the likelihood of the school board adopting the superintendent's termination recommendation. Ms. Davis also assigns error to the Board's finding that, because she did not show that she would have been discharged with certainty, she failed to demonstrate good cause to quit.

Ms. Davis asserts that, pursuant to the studied advice of her lawyer, she had good cause to quit her job rather than submit to a hearing where the superintendent's recommendation would be upheld by the school board in a routine fashion. Ms. Davis contends that, given the totality of the circumstances, she was compelled to resign rather than face termination and public disclosure of the stated reasons for her termination. Ms. Davis contends that the Board erred in requiring her to prove with certainty that she would be terminated because such a standard conflicts with the "good cause" requirement. Given the likelihood of her impending termination and the resulting damage to her chances of future employment, Ms. Davis submits that the average worker in her position would have given up her employment.

In support of her argument, Ms. Davis cites a Texas case, *Madisonville Consolidated Independent School District v. Texas Employment Commission*, 821 S.W.2d 310 (Tex. App. 1991). However, we are not bound to follow decisions from our sister jurisdictions, and regardless, there are distinguishing factors in *Madisonville* that would render it inapposite.

Our decision in *Anderson v. Director, Arkansas Employment Security Department*, 59 Ark. App. 266, 957 S.W.2d 712 (1997), is instructive. In *Anderson*, the Board denied benefits on a finding that the appellant voluntarily quit his job without cause connected with the work. In finding the absence of good cause, the Board did not accept appellant's claim that he quit in lieu of certain discharge. The Board was persuaded instead by the employer-representative's testimony indicating that, although appellant had been suspended pending an accident investigation, no decision had yet been made regarding the appellant's continued employment. In affirming the Board's decision, we wrote:

5

Although the dissent maintains that termination was inevitable, the Board made a contrary finding that is supported by substantial evidence. The record supports the view that termination was not a certainty, and appellant's own testimony establishes that he was aware that the employer had not reached that decision. We thus cannot disagree with the Board's conclusion that good cause was not shown.

*Anderson*, 59 Ark. App. at 270, 957 S.W.2d at 714.

In the case at bar, Ms. Davis thought she was going to be terminated and chose to voluntarily quit her job rather than present her version of the facts at a hearing before the school board. In her brief, Ms. Davis asserts that because she testified that the school board would have adopted the superintendent's recommendation to terminate her, and because the school district failed to present any witnesses at the hearing for unemployment benefits before the Arkansas Appeal Tribunal, her testimony was undisputed. However, contrary to appellant's contention, the testimony of a party is never considered undisputed or uncontroverted. *See Velder v. Crown Exploration Co.*, 10 Ark. App. 273, 663 S.W.2d 205 (1984). Moreover, the issue of a claimant's credibility and the weight to be afforded her testimony are matters exclusively for the Board to determine. *See Ballard, supra.*

In this case, Ms. Davis was notified in writing of her right to a hearing before the school board that would have allowed her to present information as to why the school board should not accept the superintendent's recommendation to terminate her contract. We have held that in order to receive unemployment benefits, an employee must make reasonable efforts to preserve her job rights. *See Lewis v. Director, Ark. Emp't Sec. Dep't*, 84 Ark. App. 381, 141 S.W.3d 896 (2004). Ms. Davis could have attempted to preserve her job rights at the scheduled hearing. No final decision had been made to terminate Ms. Davis's

employment, and the Board was not required to accept her testimony that her termination was inevitable. We hold that substantial evidence supports the Board's finding that, under these circumstances, the average able-bodied worker would not have voluntarily given up her employment. Therefore, we uphold the Board's decision that Ms. Davis failed in her burden to prove that she quit for good cause connected with her work, thereby disqualifying Ms. Davis from unemployment benefits.

Affirmed.

GRUBER and WOOD, JJ., agree.

*Mitchell, Blackstock, Ivers & Sneddon, PLLC*, by: *Clayton R. Blackstock*, for appellant.

*Phyllis A. Edwards*, for appellee.