

# ARKANSAS COURT OF APPEALS

DIVISION II
No. E-12-951

| | |
|---|---|
| CRYSTALEE D. NELSON | **Opinion Delivered** September 25, 2013 |
| APPELLANT | APPEAL FROM THE ARKANSAS BOARD OF REVIEW |
| V. | [NO. 2012-BR-02054] |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, AND PRN MEDICAL SERVICES | |
| APPELLEES | AFFIRMED AS MODIFIED |

**PHILLIP T. WHITEAKER, Judge**

The Department of Workforce Services denied appellant Crystalee Nelson's application for unemployment benefits after it found that she voluntarily left her last work without good cause connected to the work. Nelson appealed the Department's decision to the Appeal Tribunal, which affirmed. Nelson then appealed to the Board of Review, which affirmed in part and reversed in part. We affirm as modified.

In her first argument on appeal, Nelson contends that substantial evidence does not support the Board's findings that she voluntarily quit her position with her employer. We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *Rodriguez v. Dir.*, 2013 Ark. App. 361; *Price v. Dir.*, 2013 Ark. App. 205. Substantial evidence is such relevant evidence that a

reasonable mind might accept as adequate to support a conclusion. *Rodriguez*, *supra*. Even when there is evidence upon which the Board might have reached a different decision, the scope of our review is limited to a determination of whether the Board reasonably could have reached the decision that it did based upon the evidence before it. *Id*.

Nelson worked as a temporary employee for PRN Medical Services, a temporary medical-staffing agency, providing home-health services to PRN's clients. Arkansas Code Annotated section 11-10-513 (Repl. 2012) sets out the parameters for when a temporary employee will be found to have voluntarily left work and thus disqualified from benefits:

> (a)(1) If so found by the Director of the Department of Workforce Services, an individual shall be disqualified for benefits if he or she voluntarily and without good cause connected with the work left his or her last work.
>
> (2)(A) An individual working as a temporary employee will be deemed to have voluntarily quit employment and will be disqualified for benefits under this subsection if upon conclusion of his or her latest assignment, the temporary employee without good cause failed to contact the temporary help firm for reassignment, provided that the employer advised the temporary employee at the time of hire that he or she must report for reassignment upon conclusion of each assignment and that unemployment benefits may be denied for failure to do so.

Nelson's employment agreement with PRN contained the following provision regarding notice:

> I understand and agree to contact PRN within 24 hours upon completion of all assignments to determine if other work is available for me. Otherwise, PRN Medical Services may assume I am terminating my employment with them. I understand that failure to contact PRN as agreed will result in denial of unemployment benefits.

The employment agreement complies with the statutory requirement to advise the employee at the time of hire that she was required to report for reassignment upon conclusion of each assignment and that unemployment benefits could be denied if she failed to do so. Thus,

SLIP OPINION

under section 11-10-513(a)(2)(A), if Nelson without good cause failed to contact PRN at the conclusion of an assignment, she is deemed to have voluntarily quit her employment and is disqualified from unemployment benefits.

Nelson's last assignment from PRN ended on December 25, 2010, when PRN called her to advise her that she was no longer needed at a client's home. At that time, Nelson claimed that she advised PRN that she had doctors' appointments on December 27 and 28 and was unavailable for assignment on those dates. Nelson testified before the Tribunal and presented proof in the form of her cell-phone records that she called PRN on January 3, 2011. She claimed to have called PRN prior to that date to inquire about available assignments, but Nelson explained that she did not have any evidence to support her statement, as she had called from a land-line phone.

PRN offered evidence that Nelson signed the written employment policy and was aware by her signature of the requirement to request another assignment. According to PRN, Nelson was offered work assignments for December 27, 28, and 30, and was also offered assignments for January 2. Nelson declined each assignment due to having car trouble. PRN could not verify that Nelson ever called after December 25 to inquire about work assignments. Despite this lack of contact from Nelson, PRN continued to attempt to contact Nelson unsuccessfully throughout January and February 2011. Because Nelson never answered her phone, PRN assumed that Nelson voluntarily quit.

Based upon this evidence, the Tribunal found that Nelson was properly advised when she was hired that she would be deemed to have quit work if she failed to ask for another

assignment when a work assignment ended. The Tribunal concluded that Nelson did not request another assignment after December 25 and rejected PRN's offers of work after that date. The Board affirmed the Tribunal on this issue.

Nelson argues that there was evidence that she requested more work after her last assignment that was completed on December 25, 2010. She notes that she called PRN directly on January 3, 2011 to inquire about work, and she maintains that the evidence showed that she "spoke with" PRN on December 26 and 27. Both the Tribunal and the Board acknowledged Nelson's argument that there was "contact" between her and PRN, but they found that the contact "was not initiated by the claimant seeking work, and refusing work could not reasonably be considered as a request for reassignment." Under our standard of review, we conclude that this decision is supported by substantial evidence.

Nelson further contends that "it should not be her burden to initiate contact, but simply to request reassignment upon completion of her last work." Nelson also insists that the Board misinterpreted the word "contact." Under her interpretation, "to contact" should be construed to mean "to generally be in contact with." She argues that "[t]he crucial aspect of the statute is that there is contact about reassignment, not who contacts whom." Because PRN called her and she spoke to them on December 27, Nelson concludes that she satisfied the statutory requirement to "contact" PRN.

We first note that, aside from citing case law setting out the basic canons of statutory construction, Nelson cites no authority that supports her interpretation of the statute. We will not consider the merits of an argument when the appellant presents no citation to

SLIP OPINION

authority in its support. *Rouse v. Dir.*, 2012 Ark. App. 186. Moreover, the language of both the statute and the employment agreement is plain and unambiguous. The statute provides that the employee "must report for reassignment upon the conclusion of each assignment," and the employment agreement states that the employee "understand[s] and agree[s] to contact PRN within 24 hours upon completion of all assignments." The evidence showed that Nelson did not contact PRN to request reassignment until January 3, 2011, nine days after the conclusion of her last assignment, and on those occasions when PRN contacted Nelson, she declined the offers of employment. We therefore conclude that the Board's decision was supported by substantial evidence.[1]

Nelson's second point on appeal is that the Board erred in finding that she failed to accept suitable work without good cause on November 9, 2010; December 26, 27, and 30, 2010; and January 2, 2011. An individual shall be disqualified for benefits if she fails, without good cause, to accept available suitable work when offered. Ark. Code Ann. § 11-10-515(a)(1)(A)(ii). Good cause is a cause which would reasonably impel the average able-bodied, qualified worker to give up his employment. *Lewis v. Dir.*, 84 Ark. App. 381, 141 S.W.3d 896 (2004). To constitute good cause, the reason for refusal must not be arbitrary or

---

[1]In a subpoint, Nelson argues that the Board improperly found that PRN complied with the statutory requirement to notify a temporary employee of his or her duty to request reassignment. She complains that, although PRN's employment agreement follows the requirement, it improperly imposes the additional requirement that the employee contact the employer within twenty-four hours. We decline to reach this issue because the Board did not make a finding as to whether PRN's twenty-four-hour notice requirement was proper or permissible. Where an argument is not raised below or ruled upon, the issue is not preserved for appellate review. *Barber v. Dir.*, 67 Ark. App. 20, 992 S.W.2d 159 (1999).

capricious, and the reason must be connected with the work itself. *Barber v. Dir.*, 67 Ark. App. 20, 992 S.W.2d 159 (1999). The question of what is good cause must be determined in light of the facts in each case. *Id*. Where a claimant has voluntarily quit work and is seeking unemployment-insurance benefits, the burden is on the claimant to show by a preponderance of the evidence that he had good cause connected with the work for quitting. *Ballard v. Dir.*, 2012 Ark. App. 371; *Owens v. Dir.*, 55 Ark. App. 255, 935 S.W.2d 285 (1996).

On November 9, Nelson refused an assignment because she was visiting a cousin in Missouri. The Board described Nelson as not being "in her job market" on this date and concluded that she was not available for suitable work and that she failed to establish good cause for refusing to accept available work. Because visiting out-of-state family is not a reason "connected with the work," we cannot say the Board's conclusion on this issue is erroneous.

Nelson offered several reasons for refusing the December 26, 27, and 30 job assignments. She first claimed that she had doctors' appointments on December 27 and 28, but as the Board noted, she failed to produce medical records to corroborate her testimony. Nelson also contended that she had car trouble that precluded her from accepting employment on those dates. Car trouble was likewise the reason Nelson reported for refusing the January 2, 2011 assignment. Lack of transportation, however, is not a reason connected with the work; Nelson could have arranged for a ride with someone or taken public transportation to get to her assignments. As such, we affirm the Board's findings that Nelson failed to establish good cause for refusing these assignments.

Finally, Nelson argues that the Board of Review "incorrectly assessed the unemployment disqualification for violations of Ark. Code Ann. § 11-10-515(a)(1)(B) as enacted in July 2011 rather than that in effect on the refusal dates." The Board denied Nelson benefits under Arkansas Code Annotated section 11-10-515(a)(1)(B) until, "subsequent to filing the claim, the claimant has had at least thirty (30) days of employment covered by an unemployment compensation law of this state, another state, or the United States."

Section 11-10-515(a)(1)(B) was amended by Act 861 of 2011. The previous version of section 11-10-515(a)(1)(B) provided that a disqualification under section 11-10-515(a)(1)(A) "shall be for eight (8) weeks of unemployment as defined in § 11-10-512." The amended version of the statute became effective on July 26, 2011, and was therefore not in effect at the time Nelson refused work. The Director agrees that Nelson should have been disqualified from benefits for the eight-week period under the previous statute. Accordingly, we affirm the denial of Nelson's benefits but modify the Board's decision to reflect the correct period of disqualification.

Affirmed as modified.

GLADWIN, C.J., and GLOVER, J., agree.

*George M. Rozzell IV P.A.*, by: *George M. Rozzell IV*, for appellant.

*Phyllis A. Edwards*, for appellee.