

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. E-13-1269

**Opinion Delivered** November 19, 2014

CONNIE JONES

APPELLANT

V.

DIRECTOR, DEPARTMENT OF
WORKFORCE SERVICES, and
LAWRENCE HALL NURSING CENTER

APPELLEES

APPEAL FROM THE ARKANSAS
BOARD OF REVIEW
[No. 2013-BR-03277]

AFFIRMED

## LARRY D. VAUGHT, Judge

Appellant Connie Jones appeals the Board of Review's (Board) decision denying her unemployment-compensation benefits on the basis that she voluntarily left her last work without good cause connected to the work. On appeal, Jones argues that she did not voluntarily leave her employment; alternatively, she argues that, if she did voluntarily leave her last work, she left for good cause. We disagree and affirm the Board's denial of benefits.

Jones was the RN supervisor for Lawrence Hall Nursing Center (LHNC) for six years. At the hearing before the Appeal Tribunal (Tribunal), Jones testified that she quit her job because she believed LHNC was attempting to cover-up an incident of elder neglect that had occurred on Thursday, June 20, 2013. On that date, Jones answered a resident's call light and found her sitting soaked in urine wearing her adult diaper on inside-out. Jones questioned the certified nursing aide (CNA), Sara Ellington, who had been assigned to the resident, if she had changed the resident, and Ellington stated that "she [the resident] did not need to." According

to Jones, Ellington quit and left the building. After taking the resident to the restroom and cleaning her up, Jones reported the incident to the nursing-center administrator, Joshua Bryan, and assistant director of nursing, Kelly Minton.

On June 20, Jones filled out an incident report and supplied witness statements from LPN Keith Britton and patient-care technician Cody Ferrell. Britton wrote that he observed that the resident's clothes were wet, Ellington was responsible, and she left the building. Ferrell stated that the resident's clothes were soaked; she was wearing her adult diaper inside-out; her skin was red and raw; she had been sitting in her chair for some time; Ellington had not checked the resident; and when questioned about it, Ellington got upset and quit.

Jones testified that the following day, Friday, June 21, 2013, Bryan told her that LHNC decided to keep the incident "in-house" and not turn it in to the Office of Long Term Care (OLTC).[1] The following Monday, June 24, a meeting was held with Jones, Bryan, Minton, Mary Wilkerson (LHNC social worker), Debbie Wheelis (LHNC director of nursing), and Kim Nunnally (LHNC assistant administrator) in attendance. Jones testified that before the meeting she had decided to quit. At that meeting, she said that she was told by Wilkerson that LHNC was going to report the incident. Wilkerson also told Jones that Ferrell was asked to write another statement to include only facts and not his opinions. Jones said that during the meeting Bryan said that "any one who would call the State was a pile of sh*t," adding that she did not know if he was talking to her because other people were there.

---

[1]Bryan denied telling Jones that the incident would be handled internally.

A couple of days later, Jones found new witness statements written by Britton and Ferrell. They were both dated June 26, 2013. Britton's June 26 statement reflected that he had been asked by Wilkerson whether Jones had been rude to Ellington on June 20, 2013, to which Britton answered no. Britton's new statement also added that Ellington told him that the resident did not need to use the restroom when Ellington asked. Ferrell's June 26 statement reflected that Wilkerson requested that he "re-word" his statement. In his new statement, Ferrell stated that the resident refused Ellington's offer to take her (the resident) to the restroom.

Jones testified that when she discovered the new statements she became more upset. Convinced that LHNC was engaged in a cover-up, she quit, effective June 27, 2013. Before quitting, Jones stated that she did not meet with the president or vice president of LHNC because Bryan was good friends with the president's son and she "had no chance" to do so.

Bryan and Nunnally testified that LHNC received Jones's complaint alleging elder abuse and that LHNC reported the allegations to the OLTC on June 25, 2013. The record confirms that the LHNC reported the incident to the OLTC on June 25, 2013, at 10:07 a.m.[2] Nunnally testified that witness statements are not required with the initial report and that after filing the initial report, LHNC had five days to investigate the allegations. The record reflects that LHNC's investigation included compiling the June 20, 2013 statements of Jones, Britton, and Ferrell; a June 25, 2013 statement of Ellington; the June 26, 2013 statements of Britton and Ferrell; June 20–26, 2013 nursing records of the resident; and a June 26, 2013 statement of the resident—all

---

[2]The record also reflects that LHNC reported Jones's allegations of elder abuse to law-enforcement officials on June 24, 2013.

SLIP OPINION

of which were provided to the OLTC. Finally, the record reflects that on June 29, 2013, the OLTC concluded that the allegations of abuse were unfounded.

The Tribunal issued a decision on October 7, 2013, finding that Jones voluntarily left her last work with good cause connected to the work; therefore, she qualified for unemployment-compensation benefits. The Tribunal found Jones's allegations of negligence, although unfounded by the OLTC, were not unreasonable; that she was treated in a disparaging manner after making the allegations; and that she took reasonable steps to rectify the problem by speaking with Bryan, Nunnally, and Wheelis to no avail before quitting work. The Tribunal further found that given the nature of Bryan's relationship with the vice-president of the company, any attempts to rectify the problem through the president or vice-president would have been futile.

LHNC appealed to the Board, which reversed the Tribunal, finding that Jones voluntarily left her last work without good cause connected with the work. The Board found that while Jones testified that she quit because LHNC was attempting to cover-up elder-abuse allegations, it was undisputed that LHNC timely reported the allegations and provided all witness statements to the OLTC. The Board also relied on the fact that the OLTC concluded that the allegations were unfounded. Further, the Board found that Jones failed to take appropriate steps to prevent any mistreatment from continuing. The Board found that Jones's testimony that she failed to report her complaints to higher management because no action would have been taken was not persuasive. This appeal followed.

This court has set forth the standard of review in unemployment cases:

On appeal, the findings of fact of the Board of Review are conclusive if they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it.

*Rivas v. Dir.*, 2013 Ark. App. 91, at 1–2 (citing *Baldor Elec. v. Dir.*, 71 Ark. App. 166, 168–69, 27 S.W.3d 771, 773 (2000)).

Arkansas Code Annotated section 11-10-513 (Repl. 2012) provides that an individual shall be disqualified for unemployment benefits if she "voluntarily and without good cause connected with the work left his or her last work." "Good cause" is defined as "a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment." *Rivas*, 2013 Ark. App. 91, at 2 (citing *Relyea v. Dir.*, 104 Ark. App. 235, 238, 290 S.W.3d 34, 36 (2008); *Perdrix-Wang v. Dir.*, 42 Ark. App. 218, 221, 856 S.W.2d 636, 638 (1993)). "Good cause is dependent not only on the reaction of the average employee, but also on the good faith of the employee involved, which includes the presence of a genuine desire to work and be self-supporting." *Id.* (citing *Lewis v. Dir.*, 84 Ark. App. 381, 386, 141 S.W.3d 896, 899–900 (2004)). Additionally, an employee is required to make reasonable efforts to preserve her job rights in order to receive unemployment benefits. *Id.*

Jones argues on appeal that substantial evidence does not support the Board's decision that she voluntarily left her work without good cause. She argues that she left for good cause because LHNC was covering up elder abuse. For support, she points to evidence that witnesses changed their statements at the request of LHNC representatives; that she was told by Bryan

that the incident would not be reported to the OLTC; and that he also told her that anyone who "called the State was a pile of sh*t."

We disagree. Substantial evidence supports the Board's finding that Jones voluntarily quit her employment without good cause because there was no cover-up. It was undisputed that LHNC reported the allegations of elder abuse to law-enforcement officials on June 24, 2013, and to the OLTC on June 25, 2013. Although Wilkerson requested that Ferrell and Britton write new statements, LHNC's report to the OLTC included *both* versions of their statements. Moreover, Wilkerson told Jones on June 24, 2013, that the incident would be reported to OLTC (and it was the following day). But Jones testified that she had already made her decision to quit before the June 24 meeting. Therefore, by the time she formally resigned, on June 27, 2013, the abuse had been already been reported. These facts are inconsistent with her position that she quit because of a cover-up.

Finally, Jones admittedly did not report her concerns about a cover-up to the president or vice-president of LHNC. The Board found that the reasons she gave for not going to higher management were unpersuasive. We review the Board's findings of fact in the light most favorable to the Board's decision, and credibility calls are for the finder of fact. *Patterson v. Dir.*, 2014 Ark. App. 113, at 5. Because substantial evidence supports the Board's finding that Jones voluntarily quit her work at LHNC without good cause and that she failed to make reasonable efforts to preserve her job rights prior to quitting, we affirm.

Affirmed.

GLADWIN, C.J., and WALMSLEY, J., agree.

*Larry J. Steele PLC*, by: *Larry J. Steele*, for appellant.

*Phyllis A. Edwards*, for separate appellee Director, Department of Workforce Services; and *Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Joseph A. Ramsey*, for separate appellee Lawrence Hall Nursing Center.